Under section 177 of the Code of Criminal Procedure, a constable had authority to arrest him for such an offense without a warrant.

The judgment should, therefore, be affirmed. I see no occasion for an opinion.

All concur.

## Court of Appeals.

January, 1894.

### PEOPLE v. WILLIAM B. HAYES.

(56 St. Rep. 456; 140 N. Y. 484.)

**1. CRIMINAL LAW—PENDENCY OF CIVIL ACTION.**

The rule as to the postponement of the trial of a criminal action till the determination of a pending civil suit involving the same subject is one of convenience and propriety, addressed to the sound discretion of the court, and the attention of the court should be called to the matter before entering upon the trial and an application made to postpone on that ground.

**2. STATUTE—EX POST FACTO LAW.**

A statute, which permits the infliction of a less degree of the same kind of punishment than was permissible when the offense was committed, is not an ex post facto law.

**3. EVIDENCE—CONFIDENTIAL COMMUNICATIONS.**

When a husband or wife, to whom a confidential communication is addressed, makes it public by giving it to another, it may be put in evidence, if otherwise admissible.

**4. APPEAL—CHARGE.**

A charge that there is no presumption to be taken against the defendant because he does not go on the witness stand; that he has the right to say to the prosecution, "It is my judgment that the situation is such that I am not bound to take the witness stand, and the law gives me that right," is no error.

5. EVIDENCE—STIPULATION.

Where, under a stipulation that all the testimony of a witness upon a former trial should be read as evidence, subject to all legal objections, the defendant's counsel refused to read a portion of the direct examination, the opposing attorney may require it to be read.

6. TRIAL—ARREST OF WITNESS.

The trial court has power, and it is within its discretion, to commit one of defendant's witnesses to jail, in the presence of the jury, by reason of the character of his testimony.

Appeal from judgment of the general term of the supreme court in the first judicial department, entered upon an order made June 30, 1893, which affirmed a judgment of the court of general sessions of the peace in and for the city and county of New York entered upon a verdict convicting the defendant of the crime of perjury.

The facts, so far as material, are stated in the opinion.

David B. Hill, for the appellant.

Henry B. B. Stapler, for the respondent.

PECKHAM, J.—In January, 1891, there was pending in the supreme court of this state an action brought by one Annie M. Keating against the above defendant. The action was brought to recover on a promissory note alleged to have been made by defendant, dated New York, October 27, 1887, and payable to the order of Annie M. Keating two years after the date thereof, for some two thousand dollars, with interest at six per cent. Judgment by default was entered January 31, 1891, against the defendant in Monroe county for the full amount of the note. A motion was subsequently, and in April, 1891, made on the part of the defendant to open that default, and for the purpose of that motion the defendant in New York county swore to an affidavit that he never owed Annie M. Keating a dollar in his life; that he had never given to her a promissory note, and that he had never seen the note upon which the action was brought, and knew nothing whatever about it; that at the time the note bore date the defendant was in Florida and

remained there the whole winter, and that he went there the first of September, 1887, and did not return until May, 1888. The default was opened, and an answer was thereupon interposed setting up substantially the facts as contained in the affidavit. The action is still pending, never having been brought to trial.

In January, 1892, the defendant was indicted by the grand jury of the county of New York for perjury in swearing to the affidavit, the indictment averring that the allegations of fact set forth in the affidavit and above mentioned were false to the knowledge of the defendant, and that in swearing to them the defendant had committed willful and corrupt perjury.

In February, 1893, the defendant was placed on trial for the offense in the court of general sessions of New York. He had previously been tried at the same term upon the same indictment, and the jury had disagreed.

Upon the second trial the defendant was convicted and sentenced to imprisonment in the state prison for eight years, and he is now undergoing such imprisonment, a stay of proceedings after the conviction having been refused. From an affirmance of the judgment by the general term the defendant has appealed here.

The counsel for the defendant has argued several grounds for a new trial, some of which will be now referred to.

(1) It is claimed on behalf of the defendant that when it appeared, as it did in the course of the trial, that the civil suit brought by Annie M. Keating against him had not yet been tried and determined upon its merits, the court should have deferred the trial upon its own motion until the determination of that action. It is conceded that no motion was made to postpone the trial of the indictment until after the determination of the civil action. The record does show that the counsel for the defendant, in the course of the trial of the indictment, and after a large amount of evidence had been given, made the objection that no indictment for perjury could stand while the action in which it is alleged it was committed is still undetermined, and that the court had no jurisdiction to proceed with the trial of

the indictment. The objection was overruled. Again, the counsel asked the court to charge the jury that the court had no jurisdiction to try the indictment until the determination of the civil action. This was refused and an exception taken.

The court committed no error in refusing to hold as requested by the counsel.

It is not a question of jurisdiction at all. The court had jurisdiction over the offense and over the person of the defendant, and whether the civil suit had, or had not been determined was a matter of not the slightest importance upon that question. The English authorities cited in the brief of counsel only show what is said to have been the practice in the English courts, which was to postpone the trial of the indictment until after the disposition of the civil action, not because the court had no jurisdiction to try the indictment before that event, but because, as matter of judgment, it was thought better to take such a course. Rex v. Simmons, 8 Car. & P. 50; id. 34 Eng. Com. Law, 603, note a. The rule in Pennsylvania does not show that the court has held that there was a lack of jurisdiction. Com. v. Dickinson, 5 Penn. L. J. 164. The rule is one of convenience and propriety, addressed to the sound discretion of the court, and the attention of the court should be called to the matter before entering upon the trial, and an application made to postpone on that ground. Upon this subject we cannot add to what has already been said at the general term.

(2) It is also urged that the court had no power to sentence the defendant, because the law which was in force at the time of the sentence was, as to the defendant, an ex post facto law.

The perjury is alleged in the indictment to have been committed in 1891, at which time the statute provided that any one convicted of perjury, in any case other than upon the trial of an indictment for a felony, should be punished for not less than two, nor more than ten years. Before the trial the statute was amended chap. 662, Laws of 1892, by leaving out the minimum limitation of the term of imprisonment, so that the punishment might be imprisonment for a less, but could not be for a greater term than under the statute thus amended.

A statute which permits the infliction of a lesser degree of the same kind of punishment than was permissible when the offense was committed, cannot be termed or regarded as an ex post facto law. The leading object in prohibiting the enactment of such a law in this country was to create another barrier between the citizen and the exercise of arbitrary power by a legislative assembly. It was well understood by the framers of our Federal Constitution that the executive was not the only power in a government such as they were about to establish, which would require constitutional limitations. The possible tyranny by a majority of a representative assemblage was well understood and appreciated, and there were for that reason many provisions inserted in the constitution, limiting the exercise of power by the Federal and also by state legislatures.

Bills of attainder and ex post facto laws had at that time a quite well-understood meaning. The former was a legislative judgment of conviction, an exercise of judicial power by parliament without a hearing and in disregard of the first principles of natural justice. Such bills had been passed in England and the parties thereby condemned had been put to death. The ex post facto law was regarded as a law which provided for the infliction of punishment upon a person for an act done, which when it was committed was innocent. 1 Black. Com. m. p., 46. Enlarging upon this definition as being of the same species and coming within the same principle, a law which aggravated a crime or made it greater than it was when committed, or one which changed the punishment or inflicted a greater punishment than the law annexed to the crime when committed, or a law which changed the rules of evidence and received less or different testimony than was required at the time of the commission of the crime, in order to convict the offender, was included in the definition of an ex post facto law. Calder v. Bull, 3 Dall., U. S. R. 386, per Chase, J., at 390. In the case just cited, Mr. Justice Chase said that the restriction not to pass any ex post facto law was to secure the person of the subject from injury or punishment in consequence of such law; that it was an additional bulwark in favor of the personal

security of the subject, to protect his person from punishment by legislative acts having a retrospective operation. No act that mollified the rigor of the criminal law was regarded as an ex post facto law, but only a law that created or aggravated the crime, increased the punishment or changed the rules of evidence in order to secure conviction. The same view of the subject was taken by Denio, J., in Hartung v. People. 22 N. Y. 95, at 105. See also, Shepherd v. People, 25 id. 406. Nowhere is it suggested that legislative interference by way of mitigating the punishment of an offence could be regarded as an ex post facto law, if applicable to offenses committed before its passage. There is no reason for any such holding. It was never supposed that constitutional obstacles would be necessary in order to prevent the improper exercise of legislative clemency. There was little to fear from that quarter upon such a subject. Those who framed the Constitution were not engaged in creating obstacles to be placed in the path of those legislators who desired by legislative enactment to exercise clemency towards offenders, nor were they anxious lest those who were intrusted with power should be disinclined to exercise it with sufficient sternness.

Human experience had furnished them with no examples of danger from that direction, and their anxiety on that account cannot be discerned from a perusal of the Federal Constitution. In many, if not in most, cases the reason for mitigating the severity of the punishment for any particular kind of crime would apply with equal force to those cases in which the crime had been committed before, as well as to those in which the crime might be committed subsequent to the enactment of the law, and we are aware of no policy which prevents such a construction of the constitutional provision as would permit that kind of a retrospective act. That it materially affects the punishment prescribed for a crime is not the true test of an ex post facto law. In regard to punishment, it must affect the offender unfavorably before it can be thus determined. It seems to us plain that there can be no reason for any other view.

I do not think that the mere fact of an alteration in the manner of punishment, without reference to the question of mitigation, necessarily renders an act obnoxious to the constitutional provision. I know it is alluded to in the two cases in this state above cited, that of Hartung and of Shepherd. In those cases the alteration was not merely in the manner. It was an alteration from capital punishment, to be inflicted in a certain manner and within a certain time after sentence was pronounced, to a punishment of a year's hard labor in state prison and then a possibility of capital punishment thereafter, at any time during the life of the criminal, at the pleasure of the governor for the time being, with imprisonment in the meantime at hard labor. As Judge Denio said: "The sword is indefinitely suspended over his head, ready to fall at any time." It was said also by the same learned judge that it was not enough to say that most persons would probably prefer such a fate to the former capital sentence, because there were no means of knowing whether the one or the other punishment would be the most severe in a given case, as that would depend upon the disposition and temperament of the convict. I think that where a change is made in the manner of the punishment, if the change be of that nature which no sane man could by any possibility regard in any other light than that of a mitigation of punishment, the act would not be ex post facto where made applicable to offenses committed before its passage.

The present case does not involve the question and it is only mentioned for the purpose of calling attention to it as one which has not yet been squarely decided in this court.

We have been referred to the case of State v. Daley, 29 Conn., 272, as holding the principle urged upon us by counsel for the defendant. A reference to the case shows that the court held that on account of the repeal of the statute before his trial, which was in existence when the crime was committed, the offender could not be punished because the statute which was passed to take its place applied only to cases which occurred subsequent to its passage. The decision was made with reference to the language used in the amending act which

the court held was clearly prospective, while the absolute repeal, in so many words, of the former act took away all right to use it for any purpose whatever. No fault can be found with the principle decided in the Connecticut court, but it has no application to this case. Precisely the same principle was decided in Commonwealth v. Marshall, 11 Pick. 350.

In Commonwealth v. Wyman, 12 Cush. 237, the Massachusetts court held that the alteration of the punishment from that of death to imprisonment for life was not ex post facto when applied to offenses committed prior to the passage of the act. We have seen that in our own state such an alteration, under the peculiarities of the statute then under discussion, was held to be an ex post facto law. I have seen no case where such an alteration as is disclosed by the act under discussion has been held to be an ex post facto law. In the Hartung case the power of the legislature to remit any separable portion of the prescribed penalty was declared, and the very case of the reduction in the term of imprisonment was cited as an instance of legislative power. We are clear that there is no constitutional objection to the statute.

(3) There were certain letters written to the defendant by his wife. These letters were offered by the People, and received in evidence under the objection of the defendant, and it is now urged that their admission was error for which a new trial should be granted. The counsel for the defendant upon this trial had called the wife of defendant as a witness, and she had broken down in health before the examination was concluded, and became so ill that it was impossible to take her examination at the house. In order to obtain the benefit of her evidence in the case, the defendant had to come to some understanding with the district attorney, or the testimony already given would have to go out, and nothing further could be admitted. Hence, the stipulation as to the reading of all the evidence of the witness taken upon the former trial, subject to all legal objections. That meant the legal objections of the party against whom the testimony was given. When the defendant read the direct examination it was subject to the legal objec-

tions which the district attorney might make, and when the latter read the cross-examination it was subject to the legal objections thereto made by the counsel for the defendant; but each side was, by the terms of the stipulation, to read the whole of the direct cross-examination, as the case might be. The objection on this occasion was first made by the defendant's counsel, who refused to read the particular portion of the direct examination, which, as the district attorney claimed, rendered some portions of the subsequent cross-examination (these particular letters included) admissible in evidence. The court, because of the stipulation, committed no error in compelling the reading of the evidence, and defendant's exception to that ruling is not good. Subsequently, when the district attorney offered the letters in evidence, the defendant's counsel objected to their introduction upon the ground that they were confidential communications from a wife to her husband, and hence, were inadmissible. Some expressions in one or two of the letters were undoubtedly contradictory of a portion of the testimony given by the witness upon the first trial. That particular portion of the wife's evidence the defendant had been compelled by the court to read. The People were entitled to the benefit of whatever contradiction there was. If some of the letters contained nothing by way of contradiction, and hence might have been claimed to be inadmissible for that reason, it is seen that there was no separate and distinct objection made to a particular letter that it contained no contradictory matter.

The objection of immateriality made by defendant was upon the ground that the letters only contradicted the witness upon an immaterial matter, viz., her belief as to the paternity of the child of the prosecutrix, Miss Keating, whether it was the child of the witness' husband or his brother's. We think the letters which contradicted the witness upon that question was properly received in evidence, and there was no separate objection taken to the others. Those which contradicted the witness might as evidence have some weight upon the question of her credibility, and the contradiction cannot be said to have been so plainly

upon an immaterial matter as to have rendered the admission of the letters error on that ground. The further ground of objection to their admission was that they were confidential communications from a wife to her husband. The answer to this objection is that the letters, after they had been received by the defendant, were given by him to his mistress, the prosecutrix, Annie M. Keating, and she subsequently delivered them to the district attorney, by whom they were offered in evidence. Comment upon the baseness of this act of the defendant is unnecessary. It speaks for itself. The result, however, is to release the letters from the operation of the rule as to confidential communications between husband and wife, and to leave them open to use as evidence to the same extent as if no such rule had ever guarded them. The rule which protects confidential communications of this nature was founded upon a wise public policy, adopted and pursued for the purpose of encouraging to the utmost that mutual confidence between husband and wife which is the strongest guaranty of a happy marriage. To this end the common law provided that all communications between husband and wife which were of a confidential nature should be kept inviolate, and should not be drawn from either party by any process of law. 1 Stark. on Ev., m. p. 39; Greenl. on Ev., 14th ed., section 254. The law appreciated the fact that even truth itself might be pursued too keenly, and might cost too much. The general evil of infusing reserve and dissimulation between parties occupying such relations to each other, would be too great a price to pay for the chance of obtaining and establishing the truth in regard to some matter under legal investigation. 1 Greenl. on Ev. § 240, note a, citing Minet v. Morgan, L. R., 8 Ch. App. 361. The case just cited related to confidential communications between attorney and client, but the principles are also applicable, and with added force, to communications between husband and wife. If, however, the privilege have been once waived by the parties, it cannot be again invoked. It is personal, so that if one overhear such a communication he may testify to it, if it be otherwise admissible in evidence. Comm. v. Griffen, 110 Mass. 181; State v.

Center, 35 Vt. 378, 386 ; Rex v. Simons, 6 Car. & P. 540 ; S. C., 25 Eng. Com. L. 565.

And when the husband or wife, to whom a written confidential communication is addressed, makes it public by giving it to another, the confidential character of the communication has departed, and it may be treated like any other communication, and put in evidence, if otherwise admissible. State v. Hoyt, 47 Conn. 518, 540 ; State v. Buffington, 20 Kan. 599, 613.

In this case every reason upon which the rule rejecting a confidential communication was originally founded is absent. The letters were addressed by the wife to her husband, and he, deliberately violating every principle of honor and decency, gives the letters to his mistress, by whom they were delivered to the district attorney. A rule which would still preserve the confidential character of these letters as against this husband would be founded upon more sentiment than sense.

(4) The charge of the learned judge in regard to the defendant not going on the stand as a witness was not subject to legal objection. The court told the jury that the defendant was not bound to go on the stand, and that he could say to the prosecution, " prove your case against me ; it is my judgment that the situation is such that I am not bound to take the witness stand, and the law gives me that right, and the law gives me that privilege. I charge you that the law says there is no presumption to be taken against a defendant by reason of the fact that he does not take the witness stand." The charge is criticised on the ground, as alleged, that the language which the judge put in the mouth of the defendant amounted to a covert insinuation that the situation was such that it would be disastrous to the defendant if he took the stand. I think the criticism ill-founded. The jury were plainly instructed as to the law and rights of the defendant. The insinuation suggested would be unwarranted from the language used. On the contrary, the natural interpretation would be that the defendant regarded the situation as one wholly lacking in proof of guilt, and he was under no obligation to go on the stand and

explain what as yet required no explanation. The case of Ruloff v. People, 45 N. Y. 213, 222, is authority for the correctness of the course pursued by the learned judge.

(5) The defendant's counsel complains also that one of the witnesses for defendant was committed to jail by the court in the presence of the jury, because of the character of his evidence given while on the stand as a witness.

This was not a question of legal error. The action of the court was within its power, to be exercised within the sound discretion of the judge.

That it might have a bad effect upon the jury and thereby prejudice the defendant's case was one of the matters to be considered by the judge before making the order, but we do not think it was legal error to make the order under the circumstances.

We have carefully looked at and considered each and all the other grounds for a new trial which are set forth and discussed in the brief of the counsel for defendant, and we are quite clear that they do not show any errors committed to the prejudice of the defendant.

The judgment should be affirmed.

All concur, except Bartlett, J., not sitting.

Judgment affirmed.