[No. S032514. Dec. 12, 1994.]

In re PEDRO T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
PEDRO T., Defendant and Appellant.

**COUNSEL**

Howard C. Cohen, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Nancy Palmieri, Janelle B. Davis and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WERDEGAR, J.**—In 1989 the Legislature amended Vehicle Code section 10851, effective January 1, 1990, to increase the maximum punishment for vehicle theft from three years to four. (Stats. 1989, ch. 930, § 11, p. 3259.) The 1989 legislation provided that the lesser, pre-1990 punishment would be reinstated as of January 1, 1993, unless the Legislature, before the latter date, otherwise directed. (Stats. 1989, ch. 930, § 12.5, p. 3266.) The Legislature did not so direct. Accordingly, the lesser punishment was reinstated as provided in the 1989 statute.

This case presents the question whether one who committed vehicle theft during the effective period of the provision for increased punishment, but whose conviction for that offense was not yet final as of the "sunset" date of that provision, can be sentenced thereunder. We answer this question in the affirmative, and conclude that *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], cited as authority for a contrary position, does not govern this case. Thus, we affirm the judgment of the Court of Appeal.

*Factual and Procedural Background*

On several occasions before April 23, 1991, Pedro T. (the minor) had been found to be within the jurisdiction of the juvenile court under Welfare and Institutions Code section 602. On that date, the District Attorney of Riverside County filed a petition subsequent alleging that on April 13, 1991, the

minor had escaped from Twin Pines Ranch. On June 20, 1991, the district attorney filed a second petition subsequent alleging, among other things, that the minor had violated Vehicle Code section 10851 by taking and driving a vehicle without the consent of the owner and with the intent to deprive the owner of possession of the vehicle. The minor admitted the truth of the April 23, 1991, petition. Following a trial on the June 20, 1991, petition, the court found the minor came within Welfare and Institutions Code section 602. The court committed him to the California Youth Authority, but suspended execution of the commitment. The minor was placed on probation with various conditions, including placement at Twin Pines Ranch.

On August 22, 1991, the minor again escaped from Twin Pines Ranch. Five days later the district attorney filed a petition subsequent alleging misdemeanor escape (Welf. & Inst. Code, § 871). Following his rearrest some months later, the minor admitted the truth of the escape allegation. The court ordered him committed to the California Youth Authority for a term of six years and six months, using as the base term the four-year maximum term for vehicle taking under former Vehicle Code section 10851. The Court of Appeal affirmed. We granted review to decide whether the minor is entitled to the benefit of the lesser punishment provided in the current version of Vehicle Code section 10851.

### Discussion

The minor contends that once the sunset provision of the 1989 statute took effect, and the version of Vehicle Code section 10851 operative when the offense was committed expired pursuant to its terms, the ameliorative effect of the reinstated lesser punishment inured to the benefit of all persons, such as himself, whose convictions under the 1989 statute were not yet final. In support of his contention, he cites our decision in *In re Estrada*, *supra*, 63 Cal.2d 740 (*Estrada*), certain legislative history, and Government Code section 9611.

*Estrada, supra*, 63 Cal.2d 740, involved a prosecution for escape in violation of Penal Code section 4530. When the petitioner in *Estrada* committed the crime of escape, section 4530 provided that an escape or an attempted escape was punishable by at least a one-year period of imprisonment, to commence from the time the prisoner would otherwise be discharged from prison. (63 Cal.2d at p. 743.) At that time, Penal Code section 3044 provided that no person convicted of an escape could be paroled until he had served at least two calendar years after his return to prison after the conviction. (63 Cal.2d at p. 743.) After the petitioner's escape, but before his conviction and sentence, Penal Code sections 3044 and 4530 were amended to reduce the penalties formerly imposed for escapes committed without

force or violence. The petitioner in *Estrada* contended he was entitled to the benefit of the ameliorative amendments.

We agreed. "The problem, of course," we observed, "is one of trying to ascertain the legislative intent—did the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so." (*Estrada, supra,* 63 Cal.2d at p. 744.) We looked to other considerations. "Paramount" among them was an appreciation that "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act." (*Id.* at pp. 744-745.) We found "inevitable" the inference the Legislature must have intended that the new statute, imposing the new, lighter penalty the Legislature thenceforth deemed sufficient, apply in every case to which it constitutionally could apply. (*Id.* at p. 745.)[1] Thus, the amendatory act, we concluded, should apply to crimes committed before its effective date, provided the judgment of conviction is not yet final. (63 Cal.2d at p. 745.)

By extension, the minor argues that whenever the Legislature amends a statute to *increase,* for a specified period, the penalty for an offense, the court, absent a saving clause, cannot apply the increased penalty in a case, such as his, that arises out of an offense committed during the specified period, but is not final until after the amendment expires or "sunsets." (See *Estrada, supra,* 63 Cal.2d at p. 747 ["The fact that the offender can be punished under the old law when the new law increases the punishment where there is an express or implied saving clause, certainly is not conclusive on the legislative intent where the new statute mitigates the punishment. If there is no saving clause he can and should be punished under the new law."].) We are unpersuaded by the minor's argument.

The basis of our decision in *Estrada* was our quest for legislative intent. Ordinarily when an amendment lessens the punishment for a crime, one may reasonably infer the Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest. In the case of a "sunset" provision attached to a temporary enhancement of penalty, the same inference cannot so readily be drawn.

---

[1] We found the legislative intent to be obvious "because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology. . . . [¶] . . . There is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution." (*Estrada, supra,* 63 Cal.2d at p. 745.) Since those words were written, however, the development of modern theories of penology has continued to unfold. (See Pen. Code, § 1170, subd. (a)(1) ["The Legislature finds and declares that the purpose of imprisonment for crime is punishment."].)

Here, in temporarily increasing the penalties for vehicle-taking, the Legislature determined the public safety required a three-year test of stricter punishments. In a preface to the statute, we find the following statement of purpose: "The Legislature finds and declares that the rapid increase in motor vehicle theft has reached crisis proportions . . . . [T]he escalating problem of vehicle theft is nurtured by the lack of any serious deterrent to this crime. . . . [¶] . . . [T]he Legislature believes that it is in the best interest for public safety to enhance the penalties for the crimes of vehicle theft and receiving stolen vehicles." (Stats. 1989, ch. 930, § 1, pp. 3246-3247.) Far from determining that a lesser punishment for vehicle theft would serve the public interest, the Legislature expressly declared that *increased* penalties were necessary. *Estrada* is not implicated on these facts.

Nor does the general rule that penal statutes are to be construed as favorably to defendants as their language and circumstances permit (see, e.g., *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]) demand a different result. The general rule applies only when some doubt exists as to the legislative purpose in enacting the law. We find no such doubt here, given the Legislature's express declaration of its aim of increasing deterrence of vehicle theft through enhancement of the applicable penalty.

Our conclusion is reinforced by consideration of the practical effect of a contrary rule. The utility of a three-year legislative experiment in enhanced penalties might be seriously undermined if those penalties, instead of applying to all offenders during the three years, could be imposed only on those whose convictions became final before the sunset date. The Legislature could reasonably assume that for a deterrent to work it must operate long enough and consistently enough to convey to the public an understanding that the heavier penalty will apply during the stated effective period of the legislation. Yet under the construction the minor urges, the three-year period would in effect be reduced to something indeterminate and much less, i.e., that period of time following the effective date of the amendment in which any particular conviction that occurred could become final before *expiration* of the three years. (See *In re Pine* (1977) 66 Cal.App.3d 593, 594 [136 Cal.Rptr. 718] [a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed].) The validity, moreover, of any conclusions to be drawn from an experimental study of the deterrent effect of enhanced penalties could be weakened by the underinclusiveness of a sampling of offenders comprised only of those whose convictions happened to become final before the sunset date of the increased penalties.

Furthermore, as the Court of Appeal in this case reasoned, a rule that retroactively lessened the sentence imposed on an offender pursuant to a

sunset clause would provide a motive for delay and manipulation in criminal proceedings. When the Legislature signals, years in advance, its intention to reduce the punishment for an offense, defendant and counsel have a strong incentive to delay the finality of a judgment in the hope of eventually receiving the lessened, postsunset term. The minor argues this reasoning is flawed, in that no offender could be *certain* the Legislature would not see fit to extend or repeal the sunset clause. But if delay or manipulation in this situation is indeed a mere gamble, as the minor urges, it nevertheless seems one a rational defendant very likely would take, regardless of inability to ensure the desired outcome. The Legislature could not have intended to encourage such machinations.[2]

Contrary to the minor's argument, the principle announced in *Bell* v. *Maryland* (1964) 378 U.S. 226, 230 [12 L.Ed.2d 822, 826, 84 S.Ct. 1814]— "the universal common-law rule that when the legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct"—does not apply here. Viewed as a whole, the Legislature's experiment in harsher penalties in no way signifies a determination that vehicle-taking is less blameworthy than previously thought.

Nor does *People* v. *Latimer* (1993) 5 Cal.4th 1203 [23 Cal.Rptr.2d 144, 858 P.2d 611] compel a different result. There, we stressed that considerations of stare decisis have special force in the area of statutory construction. (*Id.* at pp. 1212-1217.) We adhere to that view. But, as we have earlier explained, *Estrada* is not controlling here. Thus, the precepts of stare decisis do not come into play.

The minor points out the Legislature failed to extend or repeal the sunset provision. He urges us to infer it believed the temporary four-year maximum term under which he was sentenced to be unnecessary to the goal of deterrence, and consequently asks us, as in *Estrada*, to extend to him the benefit of the amelioration. But legislative inactivity *after* the passage of the

---

[2]The minor also urges us to reject this reasoning because the dissenting opinion in *Estrada* unavailingly raised the same point. (*Estrada, supra,* 63 Cal.2d at p. 753 (dis. opn. of Burke, J.).) To the contrary, the point is not meritless *in this context,* despite the failure of the dissenting justice to persuade a majority of the *Estrada* court. In *Estrada* we determined the Legislature intended that punishment in cases not yet final be *ameliorated,* in keeping with the statutory amendments. The dissent's discussion of the probable untoward consequences of that ruling did not deter us from effectuating the legislative intent. By contrast, here we conclude the Legislature intended that all offenders who violated Vehicle Code section 10851 during the effective period of the enhanced penalties should receive the *temporarily harsher* punishment. Recitation of the untoward consequences of a *contrary* rule merely strengthens our conclusion.

sunset provision casts no light on the Legislature's intent *when it enacted the statute.* It is axiomatic that in assessing the import of a statute, we must concern ourselves with the Legislature's purpose at the time of the enactment. (See *People* v. *Harvey* (1980) 112 Cal.App.3d 132, 138-139 [169 Cal.Rptr. 153].) The dissent, like the minor, appears to seek evidence of the Legislature's intent in its *inactivity* at some indefinite time subsequent to passage of the 1989 version of Vehicle Code section 10851. Yet to seek a hypothetical legislative intent at some time after enactment of the statute would seem necessarily to disregard the probable legislative intent at the time of the enactment. We are directed to no authority sanctioning such an approach.

As we have seen, the Legislature's aim in enacting the temporary sentence increases in Vehicle Code section 10851 is plain: to punish, more severely than before, persons who committed vehicle-taking within a three-year period. Even if we were to adopt the unorthodox approach advocated by the minor and espoused by the dissent, and were to embark on a search for hypothetical postenactment legislative intent based on legislative silence, our conclusion would remain the same. We have found no facts to suggest that, as of the time of the minor's offense, the original legislative aim had somehow ceased to operate, and it is impossible to discern at what point, if any, during the period of legislative inactivity the Legislature might have determined to let its experiment in enhanced penalties terminate as to all criminal proceedings not yet final as of the sunset date. Much truer to the original legislative purpose, we believe, is a determination the provision for enhanced penalties shall apply to all vehicle thefts committed during its stated effective period.

Similarly unpersuasive is the fact the Legislature twice extended, and then repealed, the sunset clause in the statute governing limitations on the granting of probation for residential burglary. (Stats. 1980, ch. 42, § 4, p. 106; Stats. 1982, ch. 1294, § 3, p. 4784; Stats. 1984, ch. 1427, § 3, p. 5011; Stats. 1985, ch. 1388, § 1, p. 4915.) That the history of the residential burglary statute, as the minor observes, demonstrates the Legislature, when it chooses, knows how to deny to a sunset clause a future ameliorative impact is true. Likewise true is the Legislature is presumed to have been aware of this court's decision in *Estrada.* (See *People* v. *Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288].) But that the Legislature, in order to preclude the future ameliorative effect of a sunset provision, is always bound to use the same method, or to enact an explicit saving clause, is not true. Despite broad language in *Estrada* regarding the necessity of express saving clauses, the dissent does not explain by what authority courts can dictate to legislative drafters the forms in which laws must be written to

express the legislative intent.[3] Rather, what *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it. We believe the very nature of a sunset clause, as an experiment in enhanced penalties, establishes—in the absence of evidence of a contrary legislative purpose—a legislative intent the enhanced punishment apply to offenses committed throughout its effective period. Because in this case we find no indication of a contrary purpose underlying the Legislature's use of a sunset provision in the 1989 version of Vehicle Code section 10851, we can infer the Legislature understood a difference existed between a limited-duration penalty increase and a permanent penalty amelioration, and so found a saving clause unnecessary. In other words, just as we find this situation distinguishable from *Estrada*, so could the Legislature.

Citing estimates, presented to the Legislature before it enacted the 1989 amendment to Vehicle Code section 10851, of the costs of longer prison terms anticipated to result from the amendment, the dissent supposes the Legislature might have concluded the fiscal impact would be too great to continue the lengthier sentences unless they clearly had a deterrent impact during the three-year period of experimentation. (Dis. opn., *post*, at p. 1059.) The dissent further suggests our decision usurps a legislative prerogative to determine the benefits and burdens of proposed statutes. (*Ibid.*) Like the dissent, we believe courts should avoid such arrogations of lawmaking power. The cited legislative history, however, fails to advance the dissent's conclusion. The Legislature, after all, enacted the temporary penalty increases *despite* the predicted fiscal impact. We have no reason to suppose the Legislature, having enacted the amendment despite awareness of the potential costs, did not intend the enhanced penalties be imposed for offenses committed throughout the amendment's predetermined effective period. If we may be accused of assuming a legislative prerogative in concluding the enhanced penalties may be so imposed, the dissent is liable to the same charge in urging they may not.

---

[3]The dissent cites *Charrot v. Municipal Court* (1968) 260 Cal.App.2d 208, 209-210 [66 Cal.Rptr. 903] (*Charrot*) for the proposition that a saving clause is essential for a valid prosecution under a sunsetted criminal statute. (Dis. opn., *post*, at p. 1056.) *Charrot* differs from this case in certain important respects: the effect of the sunset provision was to *decriminalize* an offense of the malum prohibitum variety; and the opinion of the *Charrot* court reflects no indication of any urgent legislative intent to deter the temporarily banned conduct. The defendant in *Charrot* was accused of being a person who " 'did wilfully and unlawfully represent and permit a representation to be made on behalf of a cosmetological establishment and school of cosmetology that its place of business was a barbershop, made by use of a display of a device similar to a barber pole and otherwise,' " as prohibited by former Business and Professions Code section 7430.5. (260 Cal.App.2d at p. 209.) The *Charrot* court, following the rule of *Estrada*, sought and purported to find evidence of a legislative intent to abate prosecutions under the expired statute. In the present case, by contrast, vehicle theft remains a punishable crime, the Legislature's deterrent aim in enacting the 1989 version of Vehicle Code section 10851 is clear, and our decision is intended fully to effectuate it. *Charrot* is not inconsistent with the conclusion we reach today.

The minor contends Government Code section 9611 requires a different result. That statute provides as follows: "Notwithstanding any other provision of this chapter [Government Code sections 9600 through 9612], whenever a provision of law is temporarily suspended, or is expressly or impliedly modified or repealed by a provision which is declared to be effective for only a limited period, the original provisions are not to be deemed repealed, but upon the expiration of the time of the temporary suspension or the effectiveness of the inconsistent provision, the original provision shall have the same force and effect as if the temporary provision had not been enacted." We do not think the statute has so sweeping an effect as the minor argues. First, it does not require courts to pretend, after the "sunset" date has passed, a temporary enactment never existed. If the minor's argument were extended to its logical conclusion, a defendant whose conviction under the temporary enactment became final *before* its expiration could argue for a reduction of sentence by means of a petition for writ of habeas corpus filed after the sunset date.[4] But if that were so, the Legislature would be virtually precluded from ever enacting an effective temporary penalty enhancement, a result we cannot endorse. Second, the statute does not address, one way or the other, whether an offense committed before the sunset of a sentencing provision, but not finally adjudicated until after that date, is to be punished with the higher penalty. Government Code section 9611 plainly is aimed at preventing the inadvertent repeal of statutes when temporary modifications or suspensions of such statutes expire by their terms. The section does not purport to dictate judicial construction of statutes containing sunset clauses.[5]

---

[4]Contrary to a suggestion by the minor's counsel at oral argument, Government Code section 9608 would not necessarily dictate a different result. That statute provides as follows: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law." (*Ibid.*) As discussed below (see fn. 5, *post*), and as acknowledged in the minor's briefing, that statute is designed to save prosecutions for criminal acts committed before the effective date of any amendments increasing punishment therefor, inasmuch as the common law rule precluded such prosecutions. (See *People v. Rossi* (1976) 18 Cal.3d 295, 299 [134 Cal.Rptr. 64, 555 P.2d 1313].)

[5]The People urge that Government Code section 9608 supports their reading of legislative intent in this case. In *Estrada* we observed that, at common law, when a statute was passed that increased the punishment for a crime, a defendant who committed the proscribed act before the effective date of the new law could not be punished under the old law because it no longer existed, and he could not be punished under the new law because its attempted application would render it an ex post facto law. (*Estrada*, *supra*, 63 Cal.2d at pp. 747-748; *People v. Rossi*, *supra*, 18 Cal.3d at p. 299; see *Sekt v. Justice's Court* (1945) 26 Cal.2d 297 [159 P.2d 17, 167 A.L.R. 833].) We reasoned that Government Code section 9608 "was enacted simply to authorize prosecutions under the former statute in order to avoid this technically absurd result by which a defendant could be prosecuted under no law, simply

The minor cites *Beckman* v. *Thompson* (1992) 4 Cal.App.4th 481, 487-489 [6 Cal.Rptr.2d 60] (*Beckman*), in support of his reading of Government Code section 9611. We find that case distinguishable. *Beckman* discussed the effect of the sunset provision in Code of Civil Procedure section 410.30, the inconvenient forum statute. The provision was one of the 1986 amendments to section 410.30. (Stats. 1986, ch. 968, § 4, p. 3347.) The sunset provision read, in full, as follows: "This section shall remain in effect only until January 1, 1992, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1992, deletes or extends that date. If that date is not deleted or extended then, on and after January 1, 1992, pursuant to Section 9611 of the Government Code, Section 410.30 of the Code of Civil Procedure, as amended by Section 1 of Chapter 601 [of] the Statutes of 1972, shall have the same force and effect as if this temporary provision had not been enacted." (*Ibid.*) The sunset date occurred while the appeal in *Beckman* was pending. The *Beckman* court concluded it was required to apply the pre-1986 version of the inconvenient forum statute by virtue of the unmistakable expression of legislative intent and the general rule that, absent a vested right, an appellate court must apply the law as it exists when the appellate court renders its decision. (*Beckman, supra,* 4 Cal.App.4th at p. 489.) The legislative intention with respect to the inconvenient forum statute, and the interplay of its sunset clause with Government Code section 9611, could scarcely have been clearer. The decision in *Beckman, supra,* 4 Cal.App.4th 481, simply effectuated it. In this case we have no equivalent legislative directive, and, as noted above, the general saving clause in Government Code section 9611, standing alone, does not support the conclusion the minor urges.

■ The parties have filed supplemental briefing concerning the recent amendments to Vehicle Code section 10851 and related statutes criminalizing vehicle theft, and the minor urges these amendments support his contention the Legislature intended the lessened postsunset penalties of the 1989 statute apply in his case. Some 10 months after the "sunset" of former Vehicle Code section 10851, the Legislature repealed and reenacted Vehicle Code section 10851 with another sunset provision. From October 11, 1993, through December 31, 1996, conviction for violation of the statute results in a possible term of imprisonment of sixteen months, two years, or three years,

because the Legislature had decided to *increase* the punishment for his crime. [Citation.]" (*People* v. *Rossi, supra,* 18 Cal.3d at p. 299.) The People urge that Government Code section 9608, a saving clause of limited scope, operates to allow the application of the temporarily enhanced punishment in this case. The minor, on the other hand, contends that the effect of section 9608 was merely to avoid a bar on prosecution of violators of Vehicle Code section 10851 whose prosecutions were pending on January 1, 1990, when the temporarily increased punishment went into effect. We agree with the minor that, in light of the consistent historical understanding of Government Code section 9608, it cannot be dispositive of this case.

or a fine of not more than $10,000, or both such imprisonment and fine. (Veh. Code, § 10851, subd. (a).) If the defendant has previously been convicted of two misdemeanor vehicle thefts, he or she is subject to a possible term of imprisonment for two, three, or four years. (Veh. Code, § 10851, subd. (b).) If the defendant has previously been convicted of felony vehicle theft, the penalties are increased to a possible term of imprisonment for three, four, or five years, or a fine of not more than $10,000, or both such imprisonment and fine. (Pen. Code, § 666.5.) On January 1, 1997, the potential sentences for vehicle theft essentially revert to those that were available under the version of the vehicle-taking statutes operative January 1, 1993. (Veh. Code, § 10851, subd. (g); compare Stats. 1993, ch. 1125, §§ 8, 11, 14, with Stats. 1989, ch. 930, §§ 8.1, 9.1, 11.1, pp. 3257-3260.)

Thus, to summarize: the 1993 legislation temporarily increased potential fines for nonrecidivists and possible imprisonment for recidivists, without either altering or explicating the language of the sunset clause common to both the statute under review and the statute in effect at the time this opinion is filed.

The currently operative statute, although certainly evincing a willingness to experiment further with enhanced penalties for vehicle-taking, does not directly reveal the Legislature's intention with respect to the issue before us. After study, we conclude nothing in the current statute is inconsistent with our reasoning. We note in particular that the statute recites: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to reinstate vehicle theft statutes with enhanced penalties which were repealed on January 1, 1993, it is necessary that this act take immediate effect." (Stats. 1993, ch. 1125, § 18.) Thus, although the Legislature did not reinstate the *precise* version of the enhanced penalties that were repealed on January 1, 1993, it did see fit to strengthen in certain respects the punishments that may be imposed through 1996, over those that had been available between January 1 and October 10, 1993.

## Conclusion

The purpose of the temporary increase in penalties under the former law was to punish more severely, and thereby deter, vehicle thefts. Application of the temporarily increased penalties to those who, like Pedro T., were convicted of vehicle theft during the effective period of the enhanced penalties, even though their convictions were not final until after the sunset date, advances the purpose the Legislature sought to achieve. We therefore affirm the judgment of the Court of Appeal.

Lucas, C. J., Baxter, J., and George, J., concurred.

**ARABIAN, J.**—I respectfully dissent. While I am as eager as the majority to deter criminal conduct, imposing on the minor a punishment the Legislature has since abandoned will not accomplish that end. Simply yet ineluctably, nothing can deter a crime already committed; neither can an obsolete punishment prevent future offenses. The Legislature has ended its experiment and allowed the increased penalty for first offense vehicle-taking to lapse, impliedly finding the more severe punishment inappropriate. Nevertheless, purporting to distinguish three decades of decisional authority, the majority have divined a legislative intent to deny the benefit of this ameliorative change to defendants whose judgments are not yet final. This result is analytically flawed and without support either in judicial precedent or the amendatory history and language of Vehicle Code section 10851. This case is indistinguishable in any meaningful respect from appellate decisions consistently extending the reach of mitigating legislation to past conduct; and the proffered justifications fail to sustain this deviation from the well-established norm.

Wisely, the majority do not undertake to reevaluate the controlling principles enunciated by this court nearly 30 years ago in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*). In *Estrada*, we disapproved the holding in *People v. Harmon* (1960) 54 Cal.2d 9 [4 Cal.Rptr. 161, 351 P.2d 329], which had rejected the common law rule of amelioration. (See *Sekt v. Justice's Court* (1945) 26 Cal.2d 297, 304-306 [159 P.2d 17, 167 A.L.R. 833]; see also *People v. Rossi* (1976) 18 Cal.3d 295, 298 [134 Cal.Rptr. 64, 555 P.2d 1313], citing *People v. Hayes* (1894) 140 N.Y. 484 [35 N.E. 951].) Instead, the court held that when a statutory amendment reduces the punishment for a crime, the determination of retroactive application is a matter of legislative intent. (*Estrada, supra,* 63 Cal.2d at p. 744.) In fathoming this question, one consideration is of "paramount importance": "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. . . . This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id.,* at pp. 744-745.) Accordingly, "where the amendatory statute mitigates punishment and there is no saving clause, the rule is

that the amendment will operate retroactively so that the lighter punishment is imposed." (*Id.*, at p. 748.)[1]

Over the ensuing three decades, the courts have considered the rule of *Estrada* well settled[2] and consistently implemented its principles in a multiplicity of circumstances.[3] The controlling precepts were most recently reiterated in *Tapia* v. *Superior Court, supra,* 53 Cal.3d at p. 301, which held that

[1]Government Code section 9608 does not substitute for an express saving clause. That statute provides, "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law." This provision "was enacted simply to authorize prosecutions under the former statute in order to avoid th[e] technically absurd result by which a defendant could be prosecuted under no law, simply because the Legislature had decided to *increase* the punishment for his crime. [Citation.]" (*People* v. *Rossi, supra,* 18 Cal.3d at p. 299; *Estrada, supra,* 63 Cal.2d at pp. 746-748.)

[2]See, e.g., *People* v. *Francis* (1969) 71 Cal.2d 66, 76 [75 Cal.Rptr. 199, 450 P.2d 591] (rule "repeatedly applied"); *In re Fink* (1967) 67 Cal.2d 692, 693 [63 Cal.Rptr. 369, 433 P.2d 161] (rule "consistently followed"); *People* v. *Rivers* (1967) 66 Cal.2d 1000, 1007 [59 Cal.Rptr. 851, 429 P.2d 171] (dis. opn. of Peters, J.) ("fundamental theory"); *People* v. *Figueroa* (1993) 20 Cal.App.4th 65, 69 [24 Cal.Rptr.2d 368], review denied February 3, 1994 ("governing rule"); *People* v. *Alexander* (1986) 178 Cal.App.3d 1250, 1259 [224 Cal.Rptr. 290] ("common law rule"); *People* v. *Community Release Bd.* (1979) 96 Cal.App.3d 792, 799 [158 Cal.Rptr. 238] ("presumption" in absence of saving clause); *In re Aaron N.* (1977) 70 Cal.App.3d 931, 938 [139 Cal.Rptr. 258] (rule "well settled").

[3]The rule of *Estrada* has not been limited to cases involving a mitigation of punishment but has been invoked in a wide variety of circumstances ranging from complete or substantial decriminalization of conduct (see, e.g., *People* v. *Collins* (1978) 21 Cal.3d 208, 212-213 [145 Cal.Rptr. 686, 577 P.2d 1026]; *People* v. *Rossi, supra,* 18 Cal.3d at pp. 299-304; *Charrot* v. *Municipal Court* (1968) 260 Cal.App.2d 208, 210 [66 Cal.Rptr. 903]) to modification of the trial court's discretionary authority (see, e.g., *People* v. *Francis, supra,* 71 Cal.2d at p. 75 [Health & Saf. Code, § 11530, allowing for alternative sentencing of county jail or state prison at trial court's discretion]; *People* v. *Durbin* (1966) 64 Cal.2d 474, 479 [50 Cal.Rptr. 657, 413 P.2d 433] [Pen. Code, § 1305, eliminating discretion to order forfeiture of bail and making discharge mandatory]). The list also includes circumstances in which the Legislature has reduced the felony classification of a crime (see *People* v. *Francis, supra,* 71 Cal.2d at p. 75; *People* v. *Flores* (1979) 92 Cal.App.3d 461, 470-474 [154 Cal.Rptr. 851]; *People* v. *Cloud* (1969) 1 Cal.App.3d 591, 600-601 [81 Cal.Rptr. 716]), increased the dollar amount for certain offenses or enhancements (*People* v. *Enriquez* (1967) 65 Cal.2d 746, 749 [56 Cal.Rptr. 334, 423 P.2d 262] [Pen. Code, § 476a, subd. (b), "not sufficient funds" checks]; *In re Kirk* (1965) 63 Cal.2d 761, 763 [48 Cal.Rptr. 186, 408 P.2d 962] [same]; *People* v. *Roberts* (1994) 24 Cal.App.4th 1462, 1466 [29 Cal.Rptr.2d 771], review den. Aug. 11, 1994 [Pen. Code, § 12022.6, robbery enhancement]), and narrowed the scope of the law or changed an element of a crime or enhancement in some respect that no longer included the defendant's conduct (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 301 [279 Cal.Rptr. 592, 807 P.2d 434] [Pen. Code, § 190.2, subds. (a)(11), (a)(12), & (c), changing elements of certain special circumstances]; *People* v. *Babylon* (1985) 39 Cal.3d 719, 727-728 [216 Cal.Rptr. 123, 702 P.2d 205] [Pen. Code, § 593e, redefining piracy of over-the-air subscription television transmissions to exclude defendant's acts]; *People* v. *Figueroa, supra,* 20 Cal.App.4th at pp. 69-71 [Health & Saf. Code, § 11353.6, subd. (b), limiting enhancement for drug trafficking near schoolyards

certain provisions of Proposition 115 modifying the elements constituting special circumstances under Penal Code section 190.2, subdivisions (a)(11), (a)(12), and (c), would apply retroactively in light of their ameliorative effect. Reviewing courts have found departure from this standard warranted only when new legislation has included an express saving clause or its equivalent or when some other consideration clearly dictated a contrary result.[4] The Legislature has also accepted the rule of *Estrada*, never statutorily altering the governing principles while continuing to conform to its procedural mandate to confirm the intention to preclude retroactive application of mitigating changes. (See, *ante*, fn. 4.)

The present circumstances involve a run-of-the-mill penalty reduction: the statute now prescribes a less severe sentencing scheme for the same criminal

---

to specified circumstances]; *People* v. *Vasquez* (1992) 7 Cal.App.4th 763, 767-768 [9 Cal.Rptr.2d 255] [Pen. Code, § 12001, excluding "pellet gun" from enhancement definition of "firearm"]; *South Coast Regional Com.* v. *Gordon* (1978) 84 Cal.App.3d 612, 617 [148 Cal.Rptr. 775] [Pub. Resources Code, § 27501, imposing "knowing and intentional" requirement]). The principles of *Estrada* also apply when changes in the law afford defendants a new benefit or eliminate a previous burden related to their criminal conduct. (See, e.g., *People* v. *Chapman* (1978) 21 Cal.3d 124, 126 [145 Cal.Rptr. 672, 577 P.2d 1012] [Health & Saf. Code, § 11357, eliminating drug offense registration requirement when possession of marijuana reclassified as misdemeanor]; *People* v. *White* (1978) 77 Cal.App.3d Supp. 17, 21-23 [144 Cal.Rptr. 128] [Pen. Code, § 851.8, authorizing sealing of arrest records upon finding of factual innocence]; *Holder* v. *Superior Court* (1969) 269 Cal.App.2d 314, 317 [74 Cal.Rptr. 853] [Pen. Code, § 1168, authorizing trial court to recall prison term for resentencing after diagnostic study by Department of Corrections].) The laws governing juveniles are subject to the rule of *Estrada* as well. (See, e.g., *In re Aaron N., supra*, 70 Cal.App.3d at pp. 937-938 [Welf. & Inst. Code, § 726, limiting period of Youth Authority confinement]; *People* v. *Benefield* (1977) 67 Cal.App.3d 51, 57-58 [136 Cal.Rptr. 465] [Welf. & Inst. Code, § 707.2, precluding sending juvenile sentenced as adult directly to state prison before evaluation by Youth Authority].)

[4]See, e.g., *People* v. *Stankewitz* (1990) 51 Cal.3d 72, 109 [270 Cal.Rptr. 817, 793 P.2d 23] (1978 death penalty initiative specified to operate prospectively only); *People* v. *Holland* (1983) 141 Cal.App.3d 795, 797 [190 Cal.Rptr. 552] (same, increase in dollar amount for grand theft [Pen. Code, § 487] from $200 to $400); *People* v. *Superior Court (Martin)* (1982) 132 Cal.App.3d 658, 663 [183 Cal.Rptr. 563] (same, repeal of mentally disordered sex offender statute); *Talley* v. *Municipal Court* (1978) 87 Cal.App.3d 109, 113 [150 Cal.Rptr. 743] (same, Welf. & Inst. Code, § 19975.13, providing for alcohol treatment program to avoid license suspension upon conviction for driving under the influence). See also *In re Griffin* (1965) 63 Cal.2d 757, 760 [48 Cal.Rptr. 183, 408 P.2d 959] (net effect of changes in punishment and parole conditions did not actually benefit defendant); *People* v. *McKinney* (1979) 95 Cal.App.3d 712, 745-746 [157 Cal.Rptr. 414] (subsequent initiative measure restoring original penalty in effect at time defendant's judgment became final); *Ralph Williams Ford* v. *New Car Dealers Policy & Appeals Bd.* (1973) 30 Cal.App.3d 494, 498 [106 Cal.Rptr. 340] (Legislature did not merely decrease penalty but "enacted a new, comprehensive scheme which completely revised the scope of the penalties"); *People* v. *Orozco* (1968) 266 Cal.App.2d 507, 515 [72 Cal.Rptr. 452, 32 A.L.R.3d 1429] (repeal of original punishment accomplished by enactment of another statute imposing same or greater penalty).

act that previously incurred a greater penalty. As such, the case is indistinguishable from every other, beginning with *Estrada* itself, in which defendants whose judgments were not then final have received the lower punishment. (See, e.g., *In re Fink, supra,* 67 Cal.2d 692; *In re Falk* (1966) 64 Cal.2d 684 [51 Cal.Rptr. 279, 414 P.2d 407]; *In re Daup* (1965) 63 Cal.2d 754 [48 Cal.Rptr. 181, 408 P.2d 957]; *People v. Community Release Bd., supra,* 96 Cal.App.3d 792; *In re Aaron N., supra,* 70 Cal.App.3d 931; *In re Pine* (1977) 66 Cal.App.3d 593 [136 Cal.Rptr. 718]; *People v. Podesto* (1976) 62 Cal.App.3d 708 [133 Cal.Rptr. 409]; *In re May* (1976) 62 Cal.App.3d 165 [133 Cal.Rptr. 33]; *People v. Ramirez* (1972) 27 Cal.App.3d 660 [104 Cal.Rptr. 102].) I find no convincing argument that the Legislature intended a contrary result here. (See also Gov. Code, § 9611.)

Most critically, the majority never directly confront the fact that the amendatory provisions increasing the penalty for violation of Vehicle Code section 10851 (section 10851) during the experimental three-year period did not contain an express saving clause, which the analysis of *Estrada* virtually demands if mitigation in penalty is to operate prospectively only. (See, e.g., *People v. Francis, supra,* 71 Cal.2d at pp. 75-76.) Indeed, the omission creates a virtual presumption of retroactivity. (*Estrada, supra,* 63 Cal.2d at p. 748; see *People v. Stankewitz, supra,* 51 Cal.3d at p. 109; *People v. Community Release Bd., supra,* 96 Cal.App.3d at p. 799.) The same result obtains even when a sunset provision, rather than an affirmative amendment to existing law, effects the change. (See *Charrot v. Municipal Court, supra,* 260 Cal.App.2d at p. 210.) "The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof." (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].)

Not only did the Legislature omit the obvious expedient of an express saving clause, it also did not extend the operative effect of the amendment or repeal the sunset clause. Any one of these measures would have easily and conclusively ensured that the higher sentencing scheme applied to all defendants committing their crimes when the greater penalty prevailed regardless of the date on which their judgments became final. However, the Legislature opted for none of them. In view of *Estrada,* as well as the extended opportunity to address the question of retroactivity, the failure to take any action under the circumstances reflects significantly on the question of intent.

Subsequent amendments to section 10851 also provide some useful insight supporting retroactive application of the lesser punishment. Since January 1993, when the penalties reverted to their prior term, section 10851 has been amended for a second experimental three-year period. (Stats. 1993,

ch. 1125, § 13.) Significantly, the sentencing range for first time offenders remains the same, i.e., at the original, "old" level of sixteen months, two years, or three years. In thus maintaining the status quo, the Legislature has strongly implied that it found the temporarily increased penalties ineffective or inefficient and has no interest in perpetuating them. Certainly, it does not rationally support the inference drawn by the majority that defendants should not benefit from the ameliorative change.

In denying defendants the lesser punishment, the majority conclude that the sunset clause, in combination with the deterrent goal of the experimental increase, somehow exempts this case from the mandate of *Estrada*. I find this reasoning unconvincing in several respects: first, to the extent that *any* degree of punishment is intended to deter criminal behavior, the majority's analysis begs the question. Unless the Legislature completely decriminalizes the conduct at issue, *some* penalty will always attach as a disincentive even if it is subsequently reduced.

More importantly, the operative effect of the sunset clause essentially rendered the question of deterrence moot. Imposing the greater punishment now cannot prevent crimes already committed; patently, the minor in this case was not deterred by the higher sentencing scheme prevailing at the time of his offense. Neither will extending the benefit of the reduction in punishment encourage repetition of the crime since section 10851 currently provides for substantially increased penalties for recidivists. (See § 10851, subds. (b) & (d)(1).) As for potential violators, they are subject only to the lesser penalty in any event and therefore cannot be deterred by withholding from past offenders the mitigating change. It is thus illogical to ascribe much, if any, significance to the original goal of deterrence in attempting to determine whether the Legislature intended to preserve the higher penalty for judgments not yet final. Indeed, in purporting to discern such an intent even when any deterrent effect is no longer possible, the majority essentially impute to the Legislature the very "desire for vengeance" *Estrada* counsels is "not permitted in view of modern theories of penology." (*Estrada, supra,* 63 Cal.2d at p. 745.)

Second, the sunset clause, in and of itself, no more rationally warrants the conclusion the Legislature desired to perpetuate the increased penalty than it does a contrary finding. It certainly does not evidence the "clear legislative intent" (*People* v. *Rossi, supra,* 18 Cal.3d at p. 299) or constitute the "compelling proof" (*People* v. *McKinney, supra,* 95 Cal.App.3d at p. 745) necessary to overcome the presumption of retroactivity articulated in *Estrada*. If anything, utilization of a sunset provision more persuasively evinces an intention consistent with the rule of *Estrada* because from the outset the expectation was that the law would eventually revert to the lesser

punishment unless *during the period of experimentation* the greater punishment demonstrably deterred the targeted criminal conduct.[5] The period of experimentation is the only relevant time frame within which to assess the deterrent impact: thereafter it is moot. Since the Legislature can always repeal or extend the sunset clause if the experiment "works," its inclusion is simply a matter of legislative economy to avoid the need to repeal the change if it does not.

Third, the majority's emphasis on the sunset clause as evidence of legislative intent misdirects the relevant inquiry. *Estrada* teaches that the proper focus lies closer to the legislative purpose in enacting the ameliorative change rather than the law it supersedes. After all, it is the current version of the statute the Legislature ultimately intended to prevail irrespective of the mechanism chosen to effectuate it. When the sunset clause reinstated the prior punishment for violation of section 10851, it presumably reflected a legislative assessment either that the greater penalty did not accomplish its objectives, or that on balance the lesser penalty sufficed to meet penological ends, or some combination of both. In these circumstances, the amendatory history is at least as consistent with extending the mitigation to all judgments not yet final as with denying it, which therefore should inure to the defendants' benefit. (Cf. *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186].)

Finally, ignoring the absence of an express saving clause, the majority essentially attempt to convert the sunset provision into an implied saving clause. This analytical legerdemain finds no decisional support. In the one case involving ameliorative legislation effected by a sunset clause, the reviewing court found no impediment to applying the rule of *Estrada*. (*Charrot* v. *Municipal Court, supra,* 260 Cal.App.2d at pp. 209-210.) In *Charrot*, the change completely decriminalized the conduct in question, which violators obviously could anticipate by virtue of the sunset provision. Nevertheless, in abating the defendant's prosecution, the court relied on the same principles that would apply had the Legislature repealed the statute by separate act.

---

[5] The majority imply that a potential criminal will not be deterred during the last year or more of the experimental period, anticipating that the sunset provision will become operative, with a concomitant reduction in penalty, by the time any eventual judgment becomes final. Thus, the Legislature must intend prospective application of the change to effectively measure the deterrent impact. Although for purposes of due process and ex post facto the law indulges the legal fiction that defendants are on notice of the punishment prevailing at the time they commit their offenses, conventional wisdom and common sense suggest it is most often just that, a fiction. I find it highly unlikely the minor in this case had a sufficient notion of the intricacies of criminal procedure and the rule of *Estrada* to plan his misconduct in the expectation of potentially avoiding a year of confinement.

In their search for legislative intent, the majority echo the fear expressed in Justice Burke's dissent in *Estrada* that "those contemplating and subsequently committing crime have all to gain and nothing to lose by seeking every avenue of delay through appeals and legal maneuvers of all kinds . . . ." (*Estrada, supra,* 63 Cal.2d 749, 753 (dis. opn. of Burke, J.).) However, this argument was consciously, if impliedly, rejected from the beginning. (See *People* v. *Francis, supra,* 71 Cal.2d at p. 77; cf. *People* v. *Enriquez, supra,* 65 Cal.2d at p. 750 [affording defendant benefit of favorable amendment, which defense counsel had anticipated in recommending guilty plea].) It has never impeded broad and universal application of *Estrada* (see, *ante,* fn. 3); and no decision declining to apply the rule has ever relied on it (see, *ante,* fn. 4). Given the fact that the Legislature retains complete control over the question of retroactivity and can readily forestall "delay and manipulation" utilized solely to extend finality, this point does not logically shed light on its intent. On the contrary, in this context the courts must proceed on the assumption that the Legislature is fully aware of this consequence of omitting an express saving clause and acts accordingly, even at the risk of affording some defendants a "windfall." It is not for the judiciary to presume to fill the void.

Indeed, the legislative history of the amendments to section 10851 indicates that such an attempt might well be unwise as well as inconsistent with the court's proper role. The Legislative Analyst's analysis of Assembly Bill No. 332 (1989-1990 Reg. Sess.), which included the temporary increase in punishment for vehicle-taking, determined that the state could expect a yearly cost of $13 million attributable to the longer felony terms. A report by the Department of Finance similarly noted the likely increase in expense and also questioned whether the prison system could accommodate the additional inmates. The Legislature could reasonably have concluded that the fiscal impact would be too great to continue the lengthier sentences unless they clearly had a deterrent impact during the three-year experimentation period. (Cf. Morain, *California's Prison Budget: Why Is It So Voracious?,* L.A. Times (Oct. 19, 1994) p. A1, col. 5.) This type of benefit/burden analysis is plainly a legislative prerogative that the courts should scrupulously avoid infringing.

For all the foregoing reasons, I would reverse the judgment of the Court of Appeal.

Mosk, J., and Kennard, J., concurred.

Appellant's petition for a rehearing was denied February 16, 1995. Mosk, J., Kennard, J., and Arabian, J., were of the opinion that the petition should be granted.