[No. AO18796. First Dist., Div. Five. Oct. 4, 1983.]

CHARLES HENRY MARTIN, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SANTA CLARA COUNTY
JUDICIAL DISTRICT OF SANTA CLARA COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

COUNSEL

Howard M. Levin for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General and Charles W. Getz IV, Deputy Attorney General, for Real Party in Interest and Respondent.

OPINION

LOW, P. J.—Petitioner, Charles Henry Martin, faces prosecution in Santa Clara Municipal Court for violation of section 8665 of the Government

Code,[1] disobeying an emergency order of July 9, 1981, by Governor Edmund G. Brown, Jr. It is alleged that Martin did not strip his garden of Mediterranean fruit fly host material in the summer of 1981. Martin's demurrer to the misdemeanor complaint was overruled. He petitioned the superior court in Santa Clara for a writ of mandate in March 1982, asking the superior court to order the municipal court to sustain the demurrer and dismiss the criminal charge. The superior court denied the petition, entered judgment and Martin appeals. We affirm.

The facts are generally not in dispute. The medfly's presence in the Santa Clara Valley was first detected in the summer of 1980, the numbers increased, and on December 24, 1980, Governor Brown declared a state of emergency of medfly infestation. The situation worsened and on July 8, 1981, the Governor declared an "Amended Proclamation Of A State Of Emergency" which contained this language: "I, Edmund G. Brown Jr., . . . have found that conditions of extreme peril to the agricultural industry and the safety of agricultural properties exist within the Counties of Alameda, San Mateo, and Santa Clara . . . ."

Then on July 9, the Governor issued an "Emergency Proclamation Order No. 2" which read in part: "All persons residing within the quarantine area shall remove all Mediterranean fruit fly hosts from trees and plants located on their property by 5:00 p.m. on Monday, July 13, 1981.

"Any person who refuses or willfully neglects to obey any provision of this order shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not to exceed five hundred dollars ($500) or by imprisonment for not to exceed six months or by both such fines and imprisonment. (Government Code Section 8665.)"

On July 28, 1981, Martin was notified of the order to remove host materials, then warned again, followed by a demand that he strip his property. Martin refused. He proceeded to the Santa Clara Superior Court and petitioned for an injunction and restraining order which the court denied on July 31, 1981. Thereafter, pursuant to an inspection warrant, a state crew removed 210 pounds of host fruit from Martin's property.

The misdemeanor charge has had pretrial review in the municipal and superior courts and now a review in this court. This required appellate, pretrial review is an anomaly of the appellate system which grants greater rights for review to misdemeanor defendants than those charged in the superior courts. (See *Gilbert* v. *Municipal Court* (1977) 73 Cal.App.3d 723,

---

[1]All references are to the Government Code unless otherwise stated.

728-729 [140 Cal.Rptr. 897]; *Burrus* v. *Municipal Court* (1973) 36 Cal.App.3d 233, 238 [111 Cal.Rptr. 539]; *Overby* v. *Municipal Court* (1981) 121 Cal.App.3d 377, 380 [175 Cal.Rptr. 352].) The judicial delay, the inequitable review treatment of superior and municipal court defendants, and the required consideration on appeal of issues prior to final judgment were addressed and ended by the legislation in Code of Civil Procedure section 904.1, effective January 1, 1983. The superior court judgment granting or denying a petition for issuance of a writ of mandamus or prohibition directed to a municipal court is not appealable after July 1, 1983, but may be subject to a discretionary review by a writ proceeding.

The respondent argues that Code of Civil Procedure section 904.1 should be applicable to this appeal. ■ The right to appeal is statutory and the Legislature may terminate a perfected appeal by retroactive legislation. (*Pacific G. R. Co.* v. *Superior Court* (1924) 70 Cal.App. 200, 202-203 [232 P. 995].) Unless the act clearly indicates an intention that it shall be retroactive and will affect pending appeals, the law is not retroactive. (*Jones* v. *Summers* (1930) 105 Cal.App. 51, 54 [286 P. 1093]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 3, p. 4020.) The statute does not so indicate. This appeal was filed July 9, 1982, and we consider its merits.

The California Emergency Services Act recognizes and responds to a fundamental role of government to provide broad state services in the event of emergencies resulting from conditions of disaster or of extreme peril to life, property, and the resources of the state. Its purpose is to protect and preserve health, safety, life, and property. (§ 8550 et seq.) A state of emergency may be proclaimed by the Governor under the conditions proscribed for any area affected (§ 8625). The act confers broad powers on the Governor to deal with emergencies.

For example, during a state of emergency, the Governor may suspend any regulatory statute or statute proscribing the procedure for conduct of state business, or suspend the orders, rules or regulations of any state agency, if these would prevent, hinder or delay the mitigation of the effects of the emergency (§ 8571). The Governor may command or utilize private property or personnel deemed by him necessary in carrying out his responsibilities, paying for its reasonable value through the State Board of Control (§§ 8572, 8652). The state is not liable for any claim based upon discretionary functions (§ 8655). The Governor is empowered to make expenditure from any fund legally available to deal with the conditions of a state of emergency (§ 8645).

Section 8665 provides: "Any person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order

or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed five hundred dollars ($500) or by imprisonment for not to exceed six months or by both such fine and imprisonment."

Martin is being prosecuted for violation of section 8665, a code section that remains unchanged and remains in effect. Cases relied on by Martin deal with a prosecution under a statute or ordinance which is later repealed or modified to remove the act from being criminal. These are not determinative. In *People* v. *Rossi* (1976) 18 Cal.3d 295 [134 Cal.Rptr. 64, 555 P.2d 1313] and *People* v. *Collins* (1978) 21 Cal.3d 208 [145 Cal.Rptr. 686, 577 P.2d 1026], Penal Code section 288a made certain consensual sex acts no longer criminal. The accused is exonerated by legislative action which also applies to pending criminal proceedings not yet final. In *Spears* v. *County of Modoc* (1894) 101 Cal. 303 [35 P. 869], penalties for violation of a municipal ordinance repealed pending appeal could no longer be exacted. In *Charrot* v. *Municipal Court* (1968) 260 Cal.App.2d 208 [66 Cal.Rptr. 903], a prosecution on a statute which expired under a sunset clause was barred because the proceeding had not yet been reduced to final judgment.

■ Any modifications or expiration of the Governor's emergency medfly order does not bar or negate a prosecution under an existing, unmodified penal provision. It is alleged that Martin's act or failure to act during the time of the emergency is the basis for the misdemeanor charge.

During any emergency, accident or extraordinary event, it is not uncommon that temporary conditions relating to health, to safety, streets or property might require compliance with authorized governmental authority under penalty of criminal sanction. When conditions return to normal and order restored, the non-compliance with governmental authority is not excused or abated. For example, a nuisance dangerous to health and safety may persist. Repeated prosecutions may proceed over claims of double jeopardy until the nuisance is abated. (See *Dapper* v. *Municipal Court* (1969) 276 Cal.App.2d 816 [81 Cal.Rptr. 340]; Pen. Code, § 373a.) The fact that the nuisance is ultimately removed does not exonerate the offender from prosecution.

■ Martin also argues that the Governor's amended declaration of emergency was defective or improper. Nothing in the emergency act requires the Governor to make findings. The Governor must state the circumstances of the emergency found to exist and that the emergency is found to be beyond local control measures (§§ 8625, 8558).

■ Section 8558, subdivision (b) provides in part: " 'State of emergency' means the duly proclaimed existence of conditions of disaster or of extreme peril to the safety of persons and property within the state . . . or are likely to be beyond the control of the services, personnel, equipment, and facilities of any single county, city and county, . . . "

Martin claims that the declaration of July 9, 1981, lacks a finding of peril to persons. The declaration of the Governor refers to "the extreme peril to the agricultural industry." That is a statement that encompasses peril to persons and property. Agriculture is operated by people, benefits and serves people. The language of the proclamation satisfies the requirements of section 8558, subdivision (b).

The order of the superior court is affirmed. Respondent's request for damages pursuant to Code of Civil Procedure section 907 is denied.

King, J., and Haning, J., concurred.