Filed 2/25/21  P. v. Hail CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

THE PEOPLE,
        Plaintiff and Respondent,
v.

WILLIAM EDWARD HAIL III,
        Defendant and Appellant.

A156418

(Sonoma County Super.
 Ct. No. SCR695503)

Defendant William Edward Hail III appeals from his judgment of conviction on six counts of financial crimes related to his contracting to perform home improvement work for two elderly residents of Petaluma, California, under which his victims paid him hundreds of thousands of dollars for work he either did not perform or complete, and for which he often lacked licenses and/or permits.  Hail argues that the trial court improperly imposed a one-year aggravated white collar enhancement sentence under Penal Code section 186.11[1] because section 186.11 incorporates sentencing terms for another statute, section 12022.6, that had been repealed under its own sunset clause by the time of his sentencing.  He further argues that the court issued protective orders against him that are not authorized by statute.  We reject Hail's claim regarding section 186.11 based on case law which holds

_____

[1] All statutory references are to the Penal Code unless otherwise indicated.

1

that the Legislature did not intend by its repeal of section 12022.6 to eliminate punishment for acts committed during the time that statute was in effect, but agree, as do the People, that the protective orders were unauthorized and must be stricken.

## BACKGROUND

Our resolution of Hail's appellate claims requires only a brief summary of the proceedings below. In November 2018, the Sonoma County District Attorney filed a first amended information charging Hail with two counts of felony theft from an elder (§ 368, subd. (d); counts one and four); two counts of felony diversion of construction funds (§ 484b; counts two and five); misdemeanor elder abuse (§ 368, subd. (c); count three); and perjury by declaration related to a mechanic's lien (§ 118; count six). The information alleged an aggravated white collar crime enhancement for five of the counts. (§ 186.11, subd. (a)(3)). A jury trial followed.

The charges stemmed from Hail's alleged criminal conduct, with co-defendant Douglas Jensen, who is not a party to this appeal, victimizing two elderly Petaluma, California residents, Jane Doe and John Doe, who were close friends of each other and in their 80s at the time (collectively, the Does). Hail and Jensen befriended the Does and, starting in 2012, Hail contracted with them to perform work on their homes, beginning mainly with the installation of solar panels and extending beyond that task over time.

At trial, the prosecution presented evidence that, among other things, the Does paid Hail hundreds of thousands of dollars up front for contracted work and, later, for work under numerous change orders, but Hail did not perform much of the work, and was not licensed to perform and/or did not obtain necessary permits for much of it. The Does not only paid up front for

2

work that was not later performed, but also paid more than the value of the work described in the contracts.

Jane Doe testified at trial that from December 2012 to the summer of 2015 she gave Hail close to $350,000, much of it up front for work contracted for, and also including money for a business loan that Hail did not repay. An expert testified that Jane Doe paid Hail over $264,000 for contracted work. The expert estimated the value of the work Hail actually did was $88,455.90, making the total amount Jane Doe was overcharged under the contracts $176,125.95.

John Doe passed away before trial. His preliminary hearing testimony was read into the record at trial. An expert testified at trial that John Doe paid Hail a total of $235,826.24 for work contracted for, and that the estimated value of the work Hail actually did was $41,257.27. Therefore, the total amount John Doe was overcharged under the contracts was $197,568.97.

An expert in forensic accounting determined that John Doe and Jane Doe paid Hail a total of $703,507.98. Hail gave $122,936.03 to Jensen and kept $580,571.95 for himself. The expert saw a pattern where a deposit from one of the Does to Hail's business bank account occurred when the account was close to zero or had a negative balance. Hail used the money largely for his personal expenses, including automobile, food and travel.

In 2015, Hail filed a mechanic's lien against Jane Doe's home, signed by Hail and Jensen, asserting under penalty of perjury that Jane Doe owed him in excess of $25,000. An expert testified that the lien was deficient because it was filed by Jensen Construction rather than Hail, who was the prime contractor on the subject contracts, and related to partially finished or undone work. Further, Hail's contracting licenses had expired when he filed

3

the lien. The expert also testified that a lien was inappropriate for work that had been already been paid for in full.

Hail denied the contentions that he had acted in bad faith or did not intend to complete the work contracted for, contested the amount of work he had completed under the subject contracts, and claimed that Jane Doe still owed him $21,500. He admitted signing a mechanic's lien under penalty of perjury in which he stated that Jane Doe owed him $26,500.

In December 2018, the jury found Hail guilty on all six counts and found the aggravated white collar enhancements to be true. The trial court subsequently sentenced Hail to a total of six years in prison, comprised of an upper term of four years for count one (felony theft from an elder), a consecutive term of one year for count four (also felony theft from an elder), and a consecutive one year term for an aggravated white collar enhancement. The court also imposed a six-month concurrent term for count three (misdemeanor elder abuse) and a four-year concurrent term for count six (perjury by declaration related to a mechanic's lien). The court stayed sentences for the remaining counts under section 654, awarded Hail 124 days of custody credits and imposed fines and fees.

## DISCUSSION

### I.

### *The Court Did Not Err in Imposing an Enhancement Sentence Under Section 186.11.*

As we have indicated, the trial court's sentencing included a consecutive one-year sentence for an aggravated white collar enhancement under section 186.11, subdivision (a)(3). Section 186.11, subdivision (a)(3) incorporates the sentencing terms stated in former section 12022.6, which was repealed by its own sunset clause as of January 1, 2018, before Hail's trial but after he committed his criminal acts. Hail argues that, because

4

section 12022.6 was no longer in effect at the time of his *sentencing*, "no way existed for the trial court to prescribe punishment for his conduct to the extent it fell within the provisions of section 186.11, subdivision (a)(3). Thus, the aggravation of [Hail's] sentence with an enhancement within the meaning of section 186.11, subdivision (a)(3), resulted in a partially unauthorized judgment. That enhancement cannot stand." The People disagree, and contend that because Hail's criminal conduct, which occurred from 2012 to 2015, predated the 2018 expiration of section 12022.6 under its sunset clause, the enhancement applied to his sentence is appropriate. We agree with the People.

Section 186.11, subdivision (a)(3) provides: "(3) If the pattern of related felony conduct involves the taking of, or results in the loss by another person or entity of, more than one hundred thousand dollars ($100,000), but not more than five hundred thousand dollars ($500,000), the additional term of punishment *shall be the term specified in paragraph (1) or (2) of subdivision (a) of Section 12022.6*." (Italics added.)

The previous version of section 12022.6 relevant to this appeal became effective on January 1, 2012. (2010 Stats., ch. 711, Digest.) At the time that Hail committed the offenses, its subdivisions (a)(1) and (a)(2) provided: "(1) If the loss exceeds sixty-five thousand dollars ($65,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of one year[; and] [¶] (2) If the loss exceeds two hundred thousand dollars ($200,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of two years." (Stats. 2010, ch. 711, § 5.)

However, at the time Hail was convicted, section 12022.6 had been repealed by its own terms. This former section 12022.6 contained a "sunset clause." (*People v. Medeiros* (2020) 46 Cal.App.5th 1142, 1147 (*Medeiros*)), Subdivision (f) provided: "It is the intent of the Legislature that the provisions of this section be reviewed within 10 years to consider the effects of inflation on the additional terms imposed. For that reason, this section shall remain in effect only until January 1, 2018, and as of that date is repealed unless a later enacted statute, which is enacted before January 1, 2018, deletes or extends that date." (Stats. 2010, ch. 711, § 5.) As a result of this subdivision, when the Legislature did not enact a successor statute by January 1, 2018, section 12022.6 was effectively repealed. To date, the Legislature has not enacted a successor statute. However, section 186.11 was and is in effect and continues to call for the additional punishment specified in section 12022.6.

Hail acknowledges the "well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary." (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59.) He argues nonetheless that the Legislature, when it "decriminalized the conduct described in section 12022.6" in 2018, "must have intended to decriminalize" the conduct described in sections 186.11, subdivision (a)(3), on the same ground—that current inflationary pressures or the lack thereof did not warrant continued enhanced punishment. He argues logic dictates this result, since it would defeat the purpose of repealing section 12022.6 "when

6

those same provisions remain alive in another statute that largely duplicates the one that has since been excised from the Penal Code."

The People disagree. Relying heavily on *In re Pedro T.* (1994) 8 Cal.4th 1041 (*Pedro T.*), they argue that the repeal of section 12022.6 does *not* apply retroactively to relieve Hail of punishment for the offenses he committed when section 12022.6 was in effect between 2012 and 2015. In *Pedro T.*, our Supreme Court clarified that an express savings clause is not necessary for the Legislature to preclude the retroactive ameliorative effect of a sunset provision. (*Id.* at pp. 1048-1049.) "[W]hat *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*Id.* at p. 1049.)

At issue in *Pedro T.* was a Vehicle Code provision, effective January 1, 1990, that increased the punishment for vehicle theft, but provided that the lesser, pre-1990 punishment would be reinstated as of January 1, 1993, unless the Legislature directed otherwise. (*Pedro T.*, *supra*, 8 Cal.4th at p. 1043.) The case presented "the question whether one who committed vehicle theft during the effective period of the provision for increased punishment, but whose conviction for that offense was not yet final as of the 'sunset' date of that provision, can be sentenced thereunder." The court "answer[ed] this question in the *affirmative*, and conclude[d] that *In re Estrada* (1965) 63 Cal.2d 740 [(*Estrada*), . . . [did] not govern this case." (*Ibid.*, italics added.)

In *Estrada*, our Supreme Court held that when the Legislature amends a statute to lessen the punishment for a crime, the lighter punishment should be imposed for a crime committed before the effective date of the amendment if there is no saving clause in the amendment and it becomes effective before

7

the defendant's judgment of convictions becomes final. (*Estrada, supra,* 63 Cal.2d at p. 744.)

The *Pedro T.* court, in holding that *Estrada* does not apply to a repeal by sunset provision, observed that "when an amendment lessens the punishment for a crime, one may reasonably infer the Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest." (*Pedro T., supra*, 8 Cal.4th at p. 1045.) It distinguished that situation, addressed in *Estrada*, from legislative inclusion of "a 'sunset' provision attached to a temporary enhancement of penalty," from which "the same inference cannot so readily be drawn." (*Pedro T.*, at p. 1045.) "[T]he very nature of a sunset clause, as an experiment in enhanced penalties," the court opined, "establishes—in the absence of evidence of a contrary legislative purpose—a legislative intent the enhanced punishment apply to offenses committed throughout its effective period." (*Id.* at p. 1049.)

Looking to the legislative purpose of the penalty enhancement for vehicle theft, the *Pedro T.* court noted the legislative declarations that vehicle theft was an " 'escalating problem . . . nurtured by the lack of any serious deterrent to this crime' " and that " 'it is in the best interest for public safety to enhance the penalties for the crimes of vehicle theft and receiving stolen vehicles.' " (*Pedro T., supra*, 8 Cal.4th at p. 1046.) "Far from determining a lesser punishment for vehicle theft would serve the public interest, the Legislature expressly declared that *increased* penalties were necessary." (*Ibid.*)

Here, the People argue that, as with the statute the Supreme Court addressed in *Pedro T.*, "[t]he legislative history of section 12022.6 clearly shows the Legislature intended to impose longer prison terms on a person

8

who caused property loss in excess of specified threshold amounts." They cite an Assembly Floor Analysis of the 2007 amendment to section 12022.6, enacted three years prior to the version of the law in effect when Hail committed his crimes,[2] quoting the following language, which the People have modified with the bracketed information to fit the current circumstances: " 'Penal Code Section 12022.6, enacted approximately [40] years ago on July 1, 1977, is one of California's original determinate sentencing enhancements. The excessive takings enhancements are extremely important in the prosecution of "white collar" crime in California. Without the enhancements, the penalties for theft or destruction of property worth $2.5 million are the same as the theft of property worth $[900].' " (Assem. Floor Analysis, Concurrence in Senate Amends. to Assem. Bill No. 1705 (2007-2008 Reg. Sess.) as amended July 9, 2007 [coms. of the author].)

Two recent appellate courts have examined whether, after the repeal of section 12022.6, punishment may be imposed under its provisions for criminal conduct committed by a defendant during the period when the statute was in effect. Both applied *Pedro T.* and concluded that such punishment may be imposed. Our colleagues in Division One of this court recently so held in *Medeiros, supra*, 46 Cal.App.5th 1142. There, the defendant committed embezzlement and grand theft of property valued at over $1.3 million, while section 12022.6 was in effect, but was sentenced after that statute's sunset clause effected the statute's repeal. (*Medeiros*, at pp. 1144, 1147.) On appeal, the defendant argued the court should strike the

---

[2] The 2007 legislation raised the monetary threshold amounts that trigger the enhancements and extended the repeal date from January 1, 2008, to January 1, 2018. (See Stats. 2007, ch. 420 [Legislative Counsel's Digest].)

enhancement because section 12022.6 had been repealed before he was sentenced. (*Medeiros*, at p. 1147.)

The *Medeiros* court explained that, under *Estrada*, the key is to ascertain whether the Legislature intended the old or the new statute to apply. (*Medeiros*, *supra*, 46 Cal.App.5th at p. 1147.) The *Estrada* rule, it stated, "does not apply inevitably whenever the Legislature reduces or eliminates punishment for a crime." (*Medeiros*, at p. 1149.) A court should not "reflexively apply a presumption" that the Legislature intended defendants like Medeiros to benefit from the retroactive application of the repeal of section 12022.6, but instead should ascertain the legislative intent regarding former section 12022.6's "sunset clause." (*Medeiros*, at p. 1149.)

The *Medeiros* court turned to the language and legislative history of former section 12022.6. The court first noted that "[t]he plain language of the statute expressly declared [in subdivision (f)] that the intent of the Legislature in including a sunset provision [was] to allow for review of the effects of inflation on the threshold amounts applicable to the prison term enhancements." (*Medeiros*, *supra*, 46 Cal.App.5th at p. 1151.) The court concluded that it was clear from this language "that the Legislature planned the conditional repeal as a mechanism to review the effects of inflation, not because it determined enhancements should no longer apply for excessive taking in 10 years." (*Ibid*.) In other words, "the Legislature expressed its intent with sufficient clarity by expressly stating the purpose of the sunset provision was to review the threshold loss amounts of the enhancements, not to eliminate them." (*Ibid*.)

The *Medeiros* court also found this conclusion was consistent with the legislative history of section 12022.6. Most notably, the court found that "the Legislative Counsel's Digest . . . states: 'This bill would state the

10

Legislature's intent that the provisions of the bill be reviewed within 10 years to consider the effects of inflation on its provisions *and that it be applied prospectively only*.' [Citations.] The use of the singular 'it' appears to refer only to 'the bill,' which suggests the Legislature intended that the entire bill, including the sunset provision, would apply prospectively. Moreover, the language regarding prospective application specifically follows a statement regarding the purpose of the sunset clause." (*Medeiros*, *supra*, 46 Cal.App.5th at pp. 1151-1152, fn. omitted.) After an extensive review of other aspects of the legislative history, including of a previous version of section 12022.6 that the court found was also consistent with the statute's prospective application, the court concluded that this history, "combined with the retention of express language in the statute regarding intent to review the threshold amounts for the effects of inflation, is persuasive evidence that the Legislature intended the sunset provision to operate as it had in the past—as an opportunity to review the loss thresholds, not as a permanent repeal of the enhancements." (*Medeiros*, at pp. 1152-1154.) The court held that the text of the statute and its legislative history demonstrated with sufficient clarity that the Legislature intended its provisions to apply to defendants who committed their crimes before January 1, 2018. (*Id.* at p. 1157.)

In *People v. Abrahamian* (2020) 45 Cal.App.5th 314 (*Abrahamian*), the Second Appellate District also concluded that the repeal of section 12022.6 applied on a prospective basis only. Abrahamian had been convicted of forgery and fraud offenses resulting in victim losses in excess of $200,000. (*Abrahamian,* at p. 320.) Among other things, she was sentenced to a consecutive term of two years for an enhancement under former section 12022.6, which had been repealed prior to her sentencing, for an

offense she had committed when the statute was in effect. (*Abrahamian*, at pp. 320-323.) She argued that because of the repeal, the sentence had to be stricken as unauthorized by law. (*Id*. at p. 336.) The court concluded that *Pedro T*. was "controlling authority" (*Abrahamian*, at p. 337) and that Abrahamian had "failed to show that, when the sunset provision of section 12022.6 was enacted, the Legislature did not intend to apply the provision's enhanced punishment to offenses committed throughout its effective period. (See *Pedro T*., *supra*, 8 Cal.4th at p. 1048 ['It is axiomatic that in assessing the import of a statute, we must concern ourselves with the Legislature's purpose at the time of the enactment'].)" (*Abrahamian*, at pp. 337-338.)

We agree with the reasoning and holdings of *Medeiros* and *Abrahamian*. Hail argues that *Pedro T*. is distinguishable from his case because the Legislature did not entirely repeal the subject provision in that case, merely directing that the older, lesser punishment go back into effect as of the sunset date (*Pedro T*., *supra*, 8 Cal.4th at p. 1043), while in his case the provision was repealed altogether. But this is a distinction without a difference. The prospective-only repeal of the enhancement set forth in section 12022.6 had the same effect of reducing punishment to the level it was prior to the adoption of the enhancement. Further, this case, like *Pedro T*., involves additional punishment that was repealed by way of a sunset clause. The *Pedro T*. court's reasoning, that "the very nature of a sunset clause, as an experiment in enhanced penalties, establishes—in the absence of evidence of a contrary legislative purpose—a legislative intent [that] the enhanced punishment apply to offenses committed throughout its effective period," applies equally here. (*Id*. at p. 1049.)

12

Hail also argues his position is supported by *People v. Rossi* (1976) 18 Cal.3d 295, 298 and *In re Fink* (1967) 67 Cal.2d 692. However, as the *Medeiros* court pointed out, *Rossi* is distinguishable because it did not involve a sunset clause, and also because it did involve the decriminalization of conduct, while Medeiros's case (and Hail's) did not involve the elimination of liability for theft. (*Medeiros*, *supra*, 46 Cal.App.5th at p. 1156.) *In re Fink* also did not involve a sunset clause, but, rather, simply followed *Estrada* in determining that a legislative change that reduced punishment under a new law should be applied retroactively. (*In re Fink*, at pp. 693-694.)

In short, Hail's claim that the court erred in imposing an enhancement sentence under section 186.11 because section 12022.6 had been repealed under its own sunset clause by the time of his sentencing lacks merit.

## II.

### *The Court's Protective Orders Should Be Stricken.*

At sentencing, the court, upon the prosecutor's request, issued protective orders regarding Jane Doe, two members of Jane Doe's family, Jensen and Jensen's girlfriend under section 136.2, thereby barring Hail from having contact with, or coming within close proximity of, these individuals. The parties agree that these protective orders were unauthorized and should be stricken. We agree.

Section 136.2 authorizes a court to issue post-conviction protective orders regarding individuals convicted of certain crimes, such as those involving domestic violence, criminal street gang activity and sex offenses. Specifically, section 136.2, subdivision (i)(1), states in relevant part that "[w]hen a criminal defendant has been convicted of a crime involving domestic violence as defined in Section 13700 or in Section 6211 of the Family Code, a violation of subdivision (a) of Section 236.1, Section 261,

13

261.5, 262, subdivision (a) of Section 266h, or subdivision (a) of Section 266i, a violation of Section 186.22, or a crime that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime."

Similarly, section 136.2, subdivision (i)(2), states that "[w]hen a criminal defendant has been convicted of a crime involving domestic violence as defined in Section 13700 or in Section 6211 of the Family Code, a violation of Section 261, 261.5, or 262, a violation of Section 186.22, or a crime that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a percipient witness to the crime if it can be established by clear and convincing evidence that the witness has been harassed, as defined in paragraph (3) of subdivision (b) of Section 527.6 of the Code of Civil Procedure, by the defendant."[3]

Here, Hail's convictions were for financial and fraud offenses that are not among the post-conviction offenses referred to in section 136.2. Therefore, the court's protective orders were unauthorized by the statute. As both parties acknowledge, they should be stricken. (*People v. Selga*, *supra*, 162 Cal.App.4th at p. 121.)

---

[3] Section 136.2 also authorizes the issuance of protective orders during the pendency of a case, but here the court did not issue the protective orders until sentencing. (See (§ 136.2, subd. (a)(1)(G)(i); (*People v. Selga* (2008) 162 Cal.App.4th 113, 118-119 [indicating certain orders are generally "operative only during the pendency of criminal proceedings and as prejudgment orders"].)

14

## DISPOSITION

The judgment is affirmed. The protective orders the court issued under section 136.2 regarding Jane Doe, two members of Jane Doe's family, Jensen and Jensen's girlfriend are stricken.

_____
STEWART, J.

We concur.


_____
RICHMAN, Acting P.J.


_____
MILLER, J.


*People v. Hail* (A156418)

16