TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 20-301 |
| of | : | |
| | : | February 3, 2022 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| ANYA M. BINSACCA | : | |
| Deputy Attorney General | : | |

The HONORABLE THOMAS J. UMBERG, STATE SENATOR, has requested an opinion on a question relating to Good Samaritan immunity.

**QUESTION PRESENTED AND CONCLUSION**

Does the declaration of a shelter crisis under Government Code section 8698 or a state of emergency under Government Code section 8625 create or define a "scene of an emergency" for purposes of the Good Samaritan law in Health and Safety Code section 1799.102?

No. Although a scene of an emergency within the meaning of Health and Safety Code section 1799.102 may sometimes exist within an area where a shelter crisis or state of emergency has been declared, such declarations do not, in and of themselves, categorically create or define a scene of an emergency under Health and Safety Code section 1799.102.

# BACKGROUND

California has a substantial population of people without homes.[1] Concern for the healthcare needs of this unhoused population prompted the question here. We are informed that medical professionals otherwise willing to volunteer medical services to unhoused individuals sometimes decline to do so based on concerns relating to insurance coverage and liability issues. Senator Umberg asks whether these professionals could be exempted from liability by the Good Samaritan provision in Health and Safety Code section 1799.102.

Common law principles provide that a person generally has no duty to come to the aid of another, but if a person elects to provide aid, that gives rise to a duty to exercise due care in doing so.[2] Good Samaritan laws are a legislative response to this due care requirement, limiting or eliminating liability for those who offer aid with no expectation of payment.[3]

The Good Samaritan law at issue here, Health and Safety Code section 1799.102, generally shields from liability a person who provides emergency care, not for compensation, at the "scene of an emergency."[4] We are asked whether the declaration of a shelter crisis under Government Code section 8698, or the declaration of a state of emergency under Government Code section 8625, creates or defines a scene of an emergency within the meaning of Health and Safety Code section 1799.102.

---

[1] Homeless Data Integration System, Understanding Homelessness in California, <https://www.bcsh.ca.gov/hcfc/hdis.html> (last viewed Jan. 31, 2022).

[2] *Van Horn v. Watson* (2008) 45 Cal.4th 322, 324, superseded on other grounds by amendment of Health & Saf. Code, § 1799.102 as stated in *Verdugo v. Target Corp.* (2014) 59 Cal.4th 312, 327.

[3] *Van Horn*, *supra*, 45 Cal.4th at p. 324.

[4] Health & Saf. Code, § 1799.102, subds. (a), (b). Subdivision (a) provides immunity for medical, law enforcement, and emergency personnel, and subdivision (b) provides immunity for everyone else. Although there are differences between the two subdivisions, they contain identical references to the phrase relevant to our inquiry here—"the scene of an emergency." The distinctions pertain to different standards of care applicable to each group: while there is no standard specified for the medical, law enforcement, and emergency personnel covered by subdivision (a), the immunity for lay persons extends only to acts or omissions not "constituting gross negligence or willful or wanton misconduct." (Health & Saf. Code, § 1799.102, subd. (b)(2).)

20-301

Government Code section 8698 allows political entities—including the State, cities, counties, and certain public agencies—to declare a "shelter crisis."[5] A shelter crisis is "a situation in which a significant number of persons are without the ability to obtain shelter, resulting in a threat to their health and safety."[6] A shelter crisis declaration limits the political entity's liability for allowing the use of public facilities for housing, and relaxes standards regarding housing, health, and safety in favor of mitigating the shelter crisis.[7]

Government Code section 8625 empowers the Governor to declare a "state of emergency" when conditions of disaster or extreme peril to the safety of people or property exist because of specified conditions, including natural disasters, riots, and cyberterrorism, and the conditions are beyond the ability of one locality to handle independently.[8] The Governor may declare a state of emergency at the request of a local official (a city mayor or authorized county official), or if the Governor finds that a local government authority is inadequate to cope with the emergency.[9] The declaration of a state of emergency gives the Governor "complete authority" over all state agencies; the right to exercise all of the State's police powers within the affected area; and the ability to deploy state employees, facilities, and equipment to prevent or alleviate actual or threatened damage due to the emergency.[10]

## ANALYSIS

Does either the declaration of a shelter crisis under Government Code section 8698, or the declaration of a state of emergency under Government Code section 8625, create or define a "scene of an emergency" within the meaning of Health and Safety Code section 1799.102? Not categorically. As we explain below, the scene of an

---

[5] Gov. Code, §§ 8698, subd. (a) (defining "political subdivision" to include the State, any city, city and county, county, special district, or school district or public agency authorized by law), 8698.2, subd. (a) (declaration of shelter crisis).

[6] Gov. Code, § 8698, subd. (d).

[7] Gov. Code, § 8698.1, subd. (a) (immunity from liability for ordinary negligence in provision of emergency housing), subd. (b) ("state or local regulatory statute, regulation, or ordinance prescribing standards of housing, health, or safety shall be suspended to the extent that strict compliance would in any way prevent, hinder, or delay the mitigation of the effects of the shelter crisis").

[8] Gov. Code, §§ 8558, subd. (b) (defining state of emergency), 8625, subd. (a) (referring to section 8558(b) for circumstances justifying declaration).

[9] Gov. Code, § 8625, subds. (b), (c).

[10] Gov. Code, §§ 8627, 8628.

emergency within Health and Safety Code section 1799.102 is a place where immediate medical attention is required.  Although such scenes of emergency may exist within areas where a shelter crisis or state of emergency has been declared, declarations under Government Code sections 8625 or 8698 do not have the legal effect of classifying all areas covered by those declarations as a scene of an emergency for purposes of section 1799.102.

The fundamental task when interpreting a statute is "to determine the Legislature's intent so as to effectuate the law's purpose."[11]  That begins by examining the statutory language and applying a plain, commonsense meaning, while placing the examined language in the context of the statute as a whole, as well as in the context of its larger statutory framework.[12]  Where the statutory language is unambiguous, its plain meaning controls.  If the language is susceptible to more than one reasonable construction, we may look to other sources, "including the ostensible objects to be achieved and the legislative history."[13]

To determine whether the declaration of a shelter crisis under Government Code section 8698, or the declaration of a state of emergency under Government Code section 8625, creates or defines a "scene of an emergency" within the meaning of Health and Safety Code section 1799.102, we must examine the meaning of "scene of an emergency."  Health and Safety Code section 1799.102 is part of the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act.[14]  The Act provides that its definitions control "[u]nless the context otherwise requires."[15]  Although the Act does not define "scene of an emergency" or "scene," it does define "emergency."

Under the Act, an "emergency" is "a condition or situation in which an individual has a need for *immediate* medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency."[16]  "Immediate" is not defined in the Act, so we refer to dictionary definitions to ascertain its ordinary, usual meaning.[17]  The relevant definition of "immediate" is "occurring, acting, or accomplished

---

[11] *People v. Murphy* (2001) 25 Cal.4th 136, 142.

[12] *Skidgel v. Cal. Unemp. Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14.

[13] *People v. Cole* (2006) 38 Cal.4th 964, 975.

[14] Health & Saf. Code, § 1797.

[15] Health & Saf. Code, § 1797.50.

[16] Health & Saf. Code, § 1797.70, italics added.

[17] *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122.

4

without loss or interval of time: instant."[18] Turning to the meaning of "scene," the relevant dictionary definition is "the place of an occurrence or action."[19] Putting all of the above definitions together, the "scene of an emergency" described in Health and Safety Code section 1799.102 is a place where an individual has a need for instant medical attention, or where emergency medical personnel or a public safety agency perceive a potential need for instant medical attention.

This definition is not equivalent to a shelter crisis under Government Code section 8698 or a state of emergency under Government Code section 8625. As explained below, neither of those provisions contains the requirement of immediate medical care that is in Health and Safety Code section 1799.102.

Government Code section 8698 defines a shelter crisis as "a situation in which a significant number of persons are without the ability to obtain shelter, resulting in a threat to their health and safety." This "threat" to health and safety is by definition different from the immediate need for medical attention contemplated by Health and Safety Code section 1799.102. A "threat" is "an indication of something impending," and thus inherently distinguished from an immediate need.[20] Of course, individuals within a declared shelter crisis area may sometimes require immediate medical attention, and the need for immediate medical care may arise more frequently in a shelter crisis area than in areas where no shelter crisis has been declared. But a declared shelter crisis does not categorically create or describe the scene of an emergency within the meaning of Health and Safety Code section 1799.102 because the needs in a shelter-crisis area, however great, are not all needs for immediate medical treatment.

---

[18] Merriam-Webster's Collegiate Dictionary (11th ed. 2020) pp. 620-621 (capitalization omitted); accord, Oxford English Dict. (3d ed. 2015, updated Sept. 2021), "immediate," definition 4b ("Occurring, accomplished, or taking effect without delay or lapse of time; done at once; instant"), Black's Law Dictionary (11th ed. 2019), "immediate" ("Occurring without delay; instant").

[19] Merriam-Webster's Collegiate Dictionary (11th ed. 2020) p. 1109, col. 2; accord, Oxford English Dict. (3d ed. 2015, updated Sept. 2021), "scene," definition 8b ("The physical site or setting at which a particular event occurs; the location of a specific occurrence, activity, etc.").

[20] Merriam-Webster's Collegiate Dictionary (11th ed. 2020) p. 1302, col. 1; accord, Oxford English Dict. (3d ed. 2015, updated Sept. 2021), "threat," definition 2 ("A denunciation to a person of ill to befall him; esp. a declaration of hostile determination or of loss, pain, punishment, or damage to be inflicted in retribution for or conditionally upon some course; a menace. Also figurative an indication of impending evil").

5

The same is true for states of emergency declared under Government Code section 8625. The Governor may declare a state of emergency in "[c]onditions of disaster or of extreme peril to the safety of persons and property caused by conditions such as air pollution, fire, flood, storm, epidemic, riot, drought, cyberterrorism, sudden and severe energy shortage, plant or animal infestation or disease, the Governor's warning of an earthquake or volcanic prediction, or an earthquake, or other conditions."[21] Although some of these conditions may result in a need for immediate medical attention, they do not all do so. For instance, states of emergency may relate to agricultural problems—like the medfly infestation of the 1980's—that have little or nothing to do with medical emergencies.[22] Thus, an area that is subject to a state of emergency declaration under Government Code section 8625 is not equivalent to an area that constitutes a scene of an emergency under Health and Safety Code section 1799.102.

The California Supreme Court's examination of the prior version of Health and Safety Code section 1799.102, and the Legislature's subsequent amendment of section 1799.102, further support the conclusion that section 1799.102 is appropriately read as limited to scenes where immediate medical treatment is needed. In a 2008 case, *Van Horn v. Watson*, the Supreme Court considered whether Health and Safety Code section 1799.102 could apply where the defendant pulled the plaintiff from a car following an accident, fearing the car was going to catch fire.[23] The plaintiff suffered paralysis and claimed that the defendant, who was not a medical professional, was negligent in unnecessarily moving plaintiff from the car.[24] The defendant asserted immunity under section 1799.102, and the plaintiff argued that the statute did not apply to a Good Samaritan who rendered nonmedical care at the scene of an emergency.[25] At the time, the statute read in its entirety:

> No person who in good faith, and not for compensation, renders emergency care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission. The scene of an emergency shall not include emergency departments and other places where medical care is usually offered.[26]

---

[21] Gov. Code, §§ 8558, subd. (b), 8625.

[22] See, e.g., *Martin v. Municipal Court* (1983) 148 Cal.App.3d 693, 695 (Governor declared state of emergency based on medfly infestation that caused "conditions of extreme peril to the agricultural industry and the safety of agricultural properties").

[23] *Van Horn*, *supra*, 45 Cal.4th at p. 325.

[24] *Id*. at p. 326.

[25] *Ibid*.

[26] Former Health & Saf. Code, § 1799.102 (Stats. 1980, c. 1260, p. 4276, § 7).

6

The Supreme Court held that the defendant was not entitled to immunity because section 1799.102 applied only to people who rendered emergency medical care.[27] The Court reasoned that because section 1799.102 is part of the Emergency Medical Services division of the Health and Safety Code, and was enacted as part of the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act, the Legislature intended the statute to apply to the provision of medical care at the scene of a medical emergency.[28] The Court further noted that legislative statements in the Act, definitions in the Act, and legislative history all supported the conclusion that section 1799.102 immunity was limited to the provision of medical care.[29] Finally, the Court observed that reading the statute broadly to immunize "*any* person who provides *any* emergency care at the scene of *any* emergency" could render superfluous other Good Samaritan statutes, and would undermine the well-established common law principle that although people have no duty to act, when they do act they must do so with due care.[30]

After the *Van Horn* decision, the Legislature acted promptly to amend section 1799.102 to expand its coverage to Good Samaritans who provide non-medical care at the scene of an emergency. The legislative history of this 2009 amendment confirms that the Legislature was responding to the Supreme Court's ruling in *Van Horn*, and intended the statute's coverage to remain limited to scenes of emergency, where a need for immediate medical attention exists. A representative statement from a committee report provides:

> The measure responds to a recent ruling by the California Supreme Court that, if left unaddressed, could inadvertently discourage people from being courageous "Good Samaritans" by coming to the aid of accident victims facing great peril. In essence, the measure provides immunity from suit to all Good Samaritans who render emergency care at the scene of an emergency regardless of whether the care they provide is found to be of a medical (e.g., CPR) or non-medical nature (e.g., carrying someone out of a burning building). However, the bill appropriately makes clear that such

---

[27] *Van Horn v. Watson*, *supra*, 45 Cal.4th at p. 327.

[28] *Ibid*.

[29] *Id*. at pp. 328-332.

[30] *Id*. at pp. 332-334, citing Gov. Code, § 50086 (immunity relating to people trained in first aid asked to assist in search and rescue) & Harb. & Nav. Code, § 656, subd. (b) (immunity relating to assistance at scene of nautical vessel collision).

broad protection from suit is appropriately not available to rescuers who engage in grossly negligent or even reckless behavior.[31]

After discussing the *Van Horn* decision, the committee report states that the bill responds to the issue raised in the case "by clarifying that this Good Samaritan statute provides immunity to all rescuers who render emergency care at the scene of an emergency—regardless of whether the care they provide is later found to be of a medical or non-medical nature."[32] The Legislature left intact, however, the definition of "emergency" as limited to situations where "an individual has a need for immediate medical attention."[33]

Thus, all relevant information bearing on statutory meaning supports the conclusion that section 1799.102 covers only scenes of emergency where immediate medical attention is required. The Legislature has chosen to design Good Samaritan laws with specificity, and has remained consistent in limiting section 1799.102's coverage to this type of emergency. It is this need for immediate medical attention that distinguishes a "scene of emergency" under section 1799.102 from areas where a declaration of a shelter crisis or state of emergency is in place.

Because the questions here were prompted by issues surrounding medical professionals, we offer an additional observation that cautions against extending section 1799.102's coverage beyond scenes where individuals are in need of immediate medical attention. The practice of medicine is highly regulated, including through specific liability limitations, some of which relate to declared states of emergency and scenes of accidents. For instance, the Emergency Services Act contains Government Code section 8625, empowering the Governor to declare states of emergency. That act also exempts from liability medical professionals who provide services during a state of emergency (or other specified emergency conditions) at the request of a government official or agency,

---

[31] Assem. Com. on Judiciary, Conc. in Sen. Amends., Assem. Bill 83 (2009-2010 reg. sess.) as amended June 15, 2009, p. 2; accord, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 83 (2009-2010 reg. sess.), pp. 3-4, Sen. Com. on Judiciary, Rep. on Assem. Bill 83 (2009-2010 reg. sess.) as amended May 6, 2009, pp. 1-3, 5.

[32] Assem. Com. on Judiciary, Conc. in Sen. Amends., Assem. Bill 83 (2009-2010 reg. sess.) as amended June 15, 2009, p. 2.

[33] Health & Saf. Code, § 1797.70.

20-301

except for willful acts or omissions.[34]  This immunity differs from that in Health and Safety Code section 1799.102 by covering actions taken at the request of a government official or agency, and by excluding willful acts and omissions.  Thus, these two immunity provisions may apply to different circumstances within one area where the Governor has declared a state of emergency.  For example, Health and Safety Code section 1799.102(a) would cover a scenario where a medical professional provides care to someone in need of immediate medical attention, and Government Code section 8659(a) would cover a medical professional providing care, including non-emergency care, at the request of government officials.

Additionally, Health and Safety Code section 1799.102 itself states that it is not meant "to alter existing protections from liability for licensed medical or other personnel specified in subdivision (a) or any other law."[35]  The specificity with which the Legislature has treated both the regulation of medical licensees and Good Samaritan statutes further weighs against imposing a broader reading of "scene of an emergency" in section 1799.102.

We reiterate that there may well be scenes within an area that has been declared a shelter crisis under Government Code section 8698 or a state of emergency under Government Code section 8625 that qualify as scenes of emergency under Health and Safety Code section 1799.102, because individuals are in need of immediate medical attention.  But areas subject to a declaration under Government Code section 8625 or 8698 are not in and of themselves equivalent to scenes of emergency under Health and Safety Code section 1799.102.

---

[34] Gov. Code, § 8659, subd. (a) ("Any physician or surgeon (whether licensed in this state or any other state), hospital, pharmacist, respiratory care practitioner, nurse, or dentist who renders services during any state of war emergency, a state of emergency, or a local emergency at the express or implied request of any responsible state or local official or agency shall have no liability for any injury sustained by any person by reason of those services, regardless of how or under what circumstances or by what cause those injuries are sustained; provided, however, that the immunity herein granted shall not apply in the event of a willful act or omission"); see also, e.g., Bus. & Prof. Code, §§ 1627.5, subd. (b) (defining immunity for dentists proving emergency medical care without expectation of compensation during a state of emergency declared under Government Code section 8625 and other specified statutes), 2395 (defining immunity for medical licensees providing emergency care at the scene of an emergency), 2396 (defining immunity for medical licensees when complications arise from care provided by another licensee), 2397 (defining immunity for medical licensees when emergencies arise in the licensee's office or a hospital).

[35] Health & Saf. Code, § 1799.102, subd. (b)(2).