Filed 2/14/22  P. v. Delcid CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076476 |
| v. | (Super.Ct.No. RIF135543) |
| RAUL EDUARDO DELCID, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  David A. Gunn, Judge.  Reversed and remanded with directions.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, Interim Assistant Attorney General, Anthony Da Silva and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2009, a jury convicted defendant and appellant Raul Eduardo Delcid of premeditated murder (Pen. Code,[1] § 187, subd. (a); count 1), premediated attempted murder (§§ 664/187 subd. (a); count 2), and active participation in a criminal street gang (§ 186.22, subd. (a); count 3). About 10 years later, in 2019, defendant filed a petition for resentencing pursuant to section 1170.95. The trial court granted the petition as to the murder conviction, but denied the petition as to the attempted murder, which was the correct result at the time, and in a prior nonpublished opinion, *People v. Delcid* (Oct. 12, 2021, E076476) (*Delcid II*), we affirmed the trial court's order. But the Legislature since has passed and the Governor has signed Senate Bill No. 775 (2020-2021 Reg. Sess.) (Senate Bill 775), which took effect on January 1, 2022. Senate Bill 775 amends section 1170.95 in various ways, and the most significant for our purposes is an amendment that expressly permits defendants convicted of attempted murder to seek relief. (Stats. 2021, ch. 551, § 2.)

Following the issuance of our prior opinion upholding the trial court's order, defendant filed a petition for review in the California Supreme Court (S271747). The court granted review and in December 2021, remanded the matter to us with directions to vacate our prior decision and reconsider the cause in light of Senate Bill 775. Defendant contends he is eligible for resentencing under section 1170.95, as amended by Senate Bill 775, and this matter should be remanded for the superior court to reconsider his petition. The People agree. We also agree. Because section 1170.95, as amended by Senate

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

Bill 775, will provide resentencing relief for individuals charged with attempted murder under certain circumstances, we will reverse the trial court's order and remand the matter for the court to reconsider defendant's petition.

I

FACTUAL AND PROCEDURAL BACKGROUND

The following relevant factual account is taken from this court's nonpublished opinion in *People v. Delcid* (Apr. 29, 2010, E048290) [nonpub. opn.] (*Delcid I*).

A.      *The Case for the Prosecution.*

On February 16, 2007, a little before 6:00 p.m., victims Gerard Phillips[2] and Joseph[3] were sitting in a parked car outside an apartment complex on Montgomery Street in Riverside. They were waiting for Joseph's sister, who had gone inside to buy some marijuana.

Joseph needed to "take a leak," so he got out of the car and entered the apartment complex, heading for some dumpsters in the back. He saw defendant and Castillo walking toward him. They both "mad dogged" him. He "mad dogged" them back.

As they were going past him, Castillo said, "Where you from?" Joseph replied, "I don't bang." Castillo then announced that he was from "5150." Joseph believed he "was going to get jumped."

---

[2]  Phillips was also known as Jerome.

[3]  Joseph was allowed to testify under his first name alone.

3

Castillo "jumped at" Joseph, his arm bent and his hand in a fist, "about to swing." Joseph, however, literally beat him to the punch. They "exchanged blows . . . ." At first, defendant just stood there, but after Joseph knocked Castillo down, defendant waded in and "exchanged a few blows, maybe one or two," with Joseph. Castillo then tackled Joseph, knocked him down, and stabbed him four times.

Meanwhile, Phillips ran up.[4] He pulled Castillo off Joseph. Castillo "scuffl[ed]" with Phillips and stabbed him four times. Castillo and defendant then ran away. Joseph survived. Phillips died of his wounds.

Juan Arteaga testified that in February 2007, he was at his friend Beto's apartment in the complex. According to Arteaga's statement to the police, Castillo and a second person arrived. Castillo was holding a bloody knife and said that he had just stabbed somebody.

At trial, however, Arteaga denied hearing Castillo say that he had stabbed somebody. Castillo did tell him about a fight, but it was Beto who said that Castillo had stabbed somebody. Arteaga also admitted that Castillo was holding a knife, but he added that he and others in the area commonly carried a knife for protection.

Arteaga identified defendant as the person who arrived with Castillo. He also testified that both Castillo and Beto were members of a gang called 5150. He himself was a member of West Side Verdugo. Arteaga showed the police Beto's apartment, but they were never able to identify or locate Beto.

---

[4] Jennifer Avalos, who had been in the parked car with Joseph and Phillips, told the police that they both got out at the same time.

4

After Castillo and defendant were arrested, they were videotaped while in a room together. Defendant repeatedly pointed to the video cameras. They spoke in whispers, covering their mouths. However, this exchange was audible:

"DELCID: They're trying to say that I know you.

"CASTILLO: Yeah, they know.

"DELCID: Huh?

"CASTILLO: They know.

"DELCID: Yeah? I don't know you. That's what I told them. I don't. Maybe? Hmm?"

Detective James Simons, a gang expert, identified 5150 as a Hispanic gang. It was also known as Mexican Royalty, MR, 5150 MR, 5150 Original, and Varrio. It was a relatively new gang that was trying to take over areas already claimed by older gangs, such as Arlanza 13. The apartment complex was in Arlanza 13's territory.

B.      *The Case for the Defense*.

Castillo testified in his own behalf. He said that he and defendant were going to get pizza when they encountered "two guys." "[T]here was an arm brush[.]" Castillo turned around.

The shorter of the two men (presumably Joseph) said, "What's up?" and asked, "[A]re you getting crazy on me?" He then punched Castillo in the face. Castillo fell to the ground, and both of the other men started hitting and kicking him. Castillo was afraid they were going to kill him. He had a folding knife in his pocket that he used for work.

He took it out and "just kept swinging it," "to get them off of [him]." The shorter man ran away immediately; the taller man kept hitting him for "a little bit," but then he ran away, too.

C. *Procedural Background*

In 2009, a jury convicted defendant of premeditated murder (§ 187, subd. (a); count 1), premediated attempted murder (§§ 664/187 subd. (a); count 2), and active participation in a criminal street gang (§ 186.22, subd. (a); count 3). As to counts 1 and 2, the jury found true the allegations that defendant committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)). Defendant was sentenced to a total term of 25 years to life in prison.

Defendant subsequently appealed. In his direct appeal, *Delcid I*, defendant argued that, among other things, the natural and probable consequences theory of aiding and abetting violates due process, there was insufficient evidence that the murder or attempted murder was a natural and probable consequence of the target offense of disturbing the peace, and the prosecutor misstated the natural and probable consequences doctrine in closing argument. Aside from the imposition of certain fees, this court rejected those arguments and affirmed defendant's convictions in 2010. (See *Delcid I*, *supra*, E048290.)

On March 27, 2017, pursuant to *People v. Chiu* (2014) 59 Cal.4th 155, the trial court resentenced defendant to 15 years to life on count 1 and deemed the murder to be second degree murder.

6

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which amended sections 188 and 189 to limit liability for felony murder and abrogate the natural and probable consequences doctrine as applied to murder. (Stats. 2018, ch. 1015.) The measure also added section 1170.95, which allows defendants convicted of murder under these theories of homicide liability to petition to vacate their convictions and to be resentenced. (Stats. 2018, ch. 1015, § 4.)

Following the enactment of Senate Bill 1437, defendant filed a petition for resentencing as to his murder conviction under section 1170.95. Defendant checked the boxes indicating that he was "convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine" and that he "could not now be convicted of 1st or 2nd degree murder because of changes to" section 188.

On February 14, 2020, the People agreed to resentencing on the murder count, and the trial court issued an order to show cause as to why defendant should not be resentenced under section 1170.95.

On October 15, 2020, the People filed a response to the order to show cause and recommendation for resentencing. The People agreed that defendant was entitled to have his murder conviction vacated, the underlying target offense of assault with force likely to cause great bodily injury (§ 245, subd. (a)(1)) imposed, and be resentenced on the remaining charges and enhancements.

Following further briefing by the parties, a hearing on defendant's petition was held on January 14, 2021. Defense counsel noted that "the current state of the law as it is right now is that [Senate Bill] [ ] 1437 does not apply to attempted murder." The trial court agreed and stated, "it doesn't completely make logical sense." Defense counsel explained, "In this particular case, since [defendant] was not the actual perpetrator of the stabbing or the intent of the actual stabbing of the victim, or the killing of the other victim, based upon the circumstances and the way the law is, he's exonerated of the murder of the one individual, but he's being convicted of attempted murder of the other." After further argument, the trial court vacated the second degree murder conviction and found that defendant was convicted of violating section 245, subdivision (a)(1), as the target offense. The court vacated defendant's sentence and resentenced defendant to a total term of 15 years to life as follows: 15 years to life for the attempted murder (count 2), plus a five-year concurrent term for the gang enhancement attached to that offense; a concurrent term of three years for the assault, plus a five-year concurrent term for the gang enhancement attached to the offense; and a concurrent term of two years for the gang participation offense (count 3).[5]

In October 2021, this court issued a nonpublished opinion affirming the trial court's denial of defendant's petition, concluding attempted murder was ineligible for relief as a matter of law under section 1170.95, because the plain language of the statute

---

[5] We note that the superior court's January 14, 2021 minute order and the February 5, 2021 abstracts of judgment incorrectly indicate sentences on the gang enhancements were stricken.

8

referred to a "murder conviction" but not attempted murder. (*Delcid II*, *supra*, E076476, at pp. 2, 6-12.) Defendant subsequently filed a petition for review with the Supreme Court (S271747).

While this matter was pending, the Legislature enacted Senate Bill 775, which amended section 1170.95 to clarify that persons convicted of manslaughter and attempted murder may be eligible for resentencing under that section. As amended, section 1170.95 expressly applies to persons "convicted of . . . attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1170.95, subd. (a).)

On December 22, 2021, S271747, the Supreme Court transferred defendant's case back to this court with directions to vacate our prior decision and reconsider the cause in light of Senate Bill 775. We received a supplemental brief from defendant arguing that the case must be remanded to the trial court in light of the recent amendments to section 1170.95 that, as relevant here, permit persons convicted of attempted murder to seek resentencing under this law. The People filed a supplemental respondent's brief agreeing with defendant that the matter should be remanded to allow the trial court to determine whether defendant was convicted of attempted murder under the natural and probable consequences and, if so, whether he is eligible for relief under section 1170.95, as amended by Senate Bill 775.

III

DISCUSSION

Prior to the enactment of Senate Bill 775, the California Courts of Appeal were uniform in concluding that resentencing relief under section 1170.95 was limited to murder convictions and did not extend to persons convicted of manslaughter or attempted murder. (See, e.g., *People v. Turner* (2020) 45 Cal.App.5th 428, 435-436.) Thus, one of the purposes of Senate Bill 775 was to clarify that section 1170.95 is applicable to manslaughter and attempted murder convictions. (See Stats. 2021, ch. 551, § 1, subd. (a), ["[T]his legislation . . . ¶ (a) [c]larifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories."].)

A defendant generally is entitled to benefit from amendments to criminal statutes that become effective while the case is still pending. (*People v. Vieira* (2005) 35 Cal.4th 264, 305 (*Vieira*).) A judgment is not final on appeal "until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed." (*People v. Nasalga* (1996) 12 Cal.4th 784, 789, fn. 5.) Because the Legislature did not pass these amendments as urgency legislation, they became effective on January 1, 2022. (See Cal. Const., art. IV, § 8, subd. (c)(1); see *People v. Camba* (1996) 50 Cal.App.4th 857, 862.) As defendant's appeal from the denial of his resentencing petition was not final on this

date, he is entitled to benefit from this remedial legislation. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1046; *Vieira*, at p. 305.)

On remand, the trial court must determine whether defendant has stated a prima facie case for relief under section 1170.95 as to his attempted murder conviction. (§ 1170.95, subd. (c).) If the court finds a prima facie case is stated, it shall issue an order to show cause and hold a hearing "to determine whether to vacate the . . . attempted murder . . . conviction and to recall the sentence and resentence [defendant] on any remaining counts in the same manner as if [he] had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95 subd. (d)(1).)

III

DISPOSITION

Our previous opinion having been vacated, we reverse the superior court's order denying defendant's petition for resentencing under section 1170.95 as to the attempted murder conviction, and remand the matter to the trial court. Upon remand, the superior court shall conduct further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____

P. J.

We concur:

MILLER _____

J.

FIELDS _____

J.